**Thomas Michael HERNDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 020–89.**

Court of Criminal Appeals of Texas,
En Banc.

April 11, 1990.

Molly Meredith LeNoir, Martin L. Le-Noir, Dallas, for appellant.

Jerry Cobb, Dist. Atty., and Gwinda Burns and Ed Brownlee, Asst. Dist. Attys., Denton, Robert Huttash, State's Atty., Austin, for the State.

---

**1.** Now the Texas Department of Criminal Jus-

## OPINION ON APPELLANT'S MOTION FOR REHEARING ON PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Appellant was convicted by a jury of possession of phenylacetone, a precursor to the manufacture of amphetamine or methamphetamine. After having found appellant guilty the jury assessed punishment at fifty (50) years in the Texas Department of Corrections[1] along with a fine of $35,-000.00. The conviction was affirmed by the Fort Worth Court of Appeals in an unpublished opinion. *Herndon v. State,* No. 02–88–031–CR (Tex.App.—Fort Worth, delivered November 23, 1988).

We granted appellant's motion for rehearing after initially refusing his petition for discretionary review to determine whether the court of appeals erred in holding that the evidence was sufficient to support the jury's verdict.

The court of appeals summarized the evidence as follows:

> This conviction involves a drug bust in which several law enforcement agencies and numerous law enforcement officers were involved. A house in a remote area of Denton County was targeted by a search warrant as a place where amphetamines were manufactured. The house was surrounded by the peace officers and the four people inside (three of whom fled from the house) were arrested and charged with possession of phenylacetone for the purpose of manufacturing amphetamines.
>
> There was testimony that the house had an odor common to drug labs and that many items of paraphernalia used in concocting drugs were seized along with over 400 grams of phenylacetone. No other ingredients for the manufacture of amphetamines were found.
>
> Some testimony placed defendant at the house but none placed him in the house or even on the porch. Testimony did place him as coming from the vicinity of the front porch and running to a white automobile as the officers were closing

tice, Institutional Division.

in on the house. One officer testified to calling out to him when he got into the vehicle, freeze, police. Freeze he did not, instead he spun his wheels and raced the vehicle away and through a closed gate into a dirt side-of-the-road embankment (having failed to negotiate the turn onto the public road). [sic et passim] He was arrested at that time.

Minutes before the bust climaxed, Herndon was observed driving a vehicle coming from the direction of the staked out house. He stopped where two narcotics officers were posing as a couple of beer drinkers, out having a good time. In the white automobile with him was a man, Robert Simonds, who was one of the three who fled from inside the house when the officers flushed them. Testimony by the narcotics officers was that Herndon demanded to know what in the hell they were doing there. They further testified that he acted nervous and agitated and told them that there had been several burglaries and he expected the police to show up at any time. After this he drove at high speed back toward the house from whence [sic] he shortly returned at high speed to crash the gate.

To this recitation of the facts we add the following. The only controlled substances found were within the house. No drugs were found in the car which appellant was driving nor was he found to be in possession of any such substances. Appellant did not appear to be under the influence of any drugs at the time, although there was testimony that he appeared to the officers to be a drug user. No weapons were found anywhere during the raid. No evidence was introduced by the state to show that appellant had any interest in the house at all. None of his possessions were found inside nor was he found to have rented or occupied the house in any way. The laboratory equipment that was seized was not assembled. No fingerprints were taken from any of the items seized by the police.

From this evidence the court of appeals concluded that there were no reasonable hypotheses other than appellant's guilty knowledge and joint control of the phenylacetone and that the evidence as a whole furnished an "affirmative link" to the operation. We are compelled to disagree with the court of appeals' conclusions.

This is a circumstantial evidence case. The standard for reviewing the sufficiency of the evidence in a circumstantial evidence case is no different from that involving a direct evidence case. However, in circumstantial evidence cases, the "reasonable hypothesis" analysis is also utilized. See *Wilford v. State*, 739 S.W.2d 854 (Tex.Cr.App. 1987); *Vaughn v. State*, 607 S.W.2d 914 (Tex.Cr.App.1980). In this instance, we need not concern ourselves with whether there is a "reasonable hypothesis" extant in this cause because, even after viewing the evidence in the light most favorable to the verdict, which we must do, see *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989), we find that the evidence is insufficient to affirmatively link appellant to the controlled substance for which he was charged and convicted of possessing within his residence.

This Court in several cases of recent vintage has held, on facts weaker than those in this cause, that there were no such affirmative links notwithstanding that the defendants were inside residences and appeared to be in charge thereof.

In *Cude v. State*, 716 S.W.2d 46 (Tex.Cr. App.1986) the defendant met the police officers at the door of an apartment, invited them in, sold a controlled substance to them and was arrested for possession of another controlled substance found within the apartment. He was never shown to have any link to the apartment notwithstanding the fact that the officers testified that he appeared to be in charge. We noted that in an unlawful possession of a controlled substance case, the state must show that the accused exercised care, custody and management over the contraband. See also *Nunn v. State*, 640 S.W.2d 304 (Tex.Cr.App.1982); *Rhyne v. State*, 620 S.W.2d 599 (Tex.Cr.App.1981). We also noted that control can be jointly exercised; however, we pointed out that when an accused is not in exclusive possession of the

place where the contraband is found it cannot be concluded that the accused exercised control or had the requisite knowledge unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. This Court concluded that there were no such affirmative links notwithstanding that the defendant was inside of the apartment.

In *Flores v. State*, 650 S.W.2d 429 (Tex. Cr.App.1983), another case in which the accused was found within the apartment where the contraband was found, this Court, after noting that the record was replete with evidence of recent usage of narcotics within the apartment, pointed out that the record was devoid of any evidence as to who owned, possessed or occupied the apartment as well as any evidence relating to how long the defendant had been at the apartment or whether he had ever been there before. We held that the evidence was insufficient to show that the defendant therein had ever, either jointly or solely, possessed the methamphetamine found within the apartment. Again, an affirmative link was required and found wanting. This Court ordered that an acquittal be entered on behalf of the defendant.

Lastly, in *Rhyne v. State*, 620 S.W.2d 599 (Tex.Cr.App.1981) this Court wrote, "The mere presence of a defendant at the scene of an offense or even knowledge of an offense does not make one a party to joint possession." Here, the only incriminating evidence shows that appellant attempted to run off two undercover officers who had set up surveillance nearby the house and he attempted to flee when the raid began. While both of these factors may show knowledge of some illegal activities at the residence neither furnishes the *affirmative* link to the phenylacetone allegedly possessed by the defendant. *Cude,* supra; *Flores,* supra; and *Rhyne,* supra. Since the evidence does not affirmatively link this appellant to the controlled substance found within the residence in that there is no evidence of appellant's care, custody and control of the drug found, the evidence is insufficient to support the conviction. *Wilford v. State*, 739 S.W.2d 854 (Tex.Cr.App.1987). The judgment of the

court of appeals is reversed and the judgment of the trial court is reformed to reflect an acquittal. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

McCORMICK, P.J., and DAVIS and STURNS, JJ., dissent.