**Clinton Robert REDMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12-90-00132-CR.**

Court of Appeals of Texas, Tyler.

May 28, 1992.

Kenneth A. Huchton, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

ONION, Justice (Retired).[1]

This is an appeal from a conviction for the offense of possession of a controlled

1. The panel before whom this cause was submitted consisted of John F. Onion, Jr., Presiding Judge (Retired), Court of Criminal Appeals, Steve Preslar, Chief Justice (Retired), El Paso

substance, to-wit: cocaine in an amount of less than 28 grams. After the jury found the Appellant guilty, the trial court assessed his punishment at ten years' imprisonment and a fine of $5,000.

Appellant advances two points of error. First, he urges that the trial court erred in failing to hold a hearing on his *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion. Second, Appellant contends that the trial court erred in denying his motion for an instructed verdict. In the alternative, he challenges the sufficiency of the evidence to sustain the conviction. We shall discuss the points of error in reverse order for reasons that will become obvious.

■ The State advances the contention that Appellant waived any error in the overruling of the instructed verdict motion when he thereafter presented defensive evidence. The State cites *Kuykendall v. State,* 609 S.W.2d 791 (Tex.Cr.App.1980). We note that *Madden v. State,* 799 S.W.2d 683, 686, n. 3 (Tex.Cr.App.1990), has in effect overruled *Kuykendall,* and we shall consider Appellant's second point of error as a challenge to the sufficiency of the conviction.

The State's evidence revealed that on February 19, 1988, Tyler Police Department Officers executed a search warrant at 207 North George Street, a residence belonging to Cleo Gardner. One other person, Robert Jones, was known to live at the house. The house had been "raided" several times in the past. The officers knew that the front door was heavily barricaded. As the officers approached the northeast corner of the house, they were apparently observed by someone inside the house. Officer Bobby Stark rushed to the back kitchen door with a ramming device. As he ran past a window, he saw three men in the kitchen near the sink and microwave oven. He heard shuffling inside the house. As he broke down the rear door, which had been newly fortified with a cable, Officer Stark observed three men flee the kitchen

towards the den area where they were "laid down." These men were Robert Jones, Stevie Roberson, and the Appellant, Clinton Redman. Robert Warren was coming out of the bathroom where the toilet was being flushed, a common method of disposing of contraband during the course of a narcotic raid. In the northeast bedroom, used by Jones, the officers found 1.1 grams of cocaine and other narcotic paraphernalia on the top of the bed. Cleo Gardner, the owner of the house, was found in the northwest bedroom. A smoking pipe used to smoke cocaine and marihuana was discovered in that bedroom. Marihuana cigarettes were found in a door-jamb in the hallway between the bedrooms, and approximately $1,700.00 in cash was discovered in the house. In addition, and most important to the instant offense, Officer Stark found in open view in the kitchen sink a pyrex measuring cup containing a large round rock of crack cocaine, freshly made or manufactured. All of the necessary ingredients and equipment used to transform cocaine hydrochloride into crack cocaine were nearby. There was water, baking soda, a microwave oven, and an ice cooler and ice water present. Although the pyrex cup and its contents had apparently been placed in the cooler or ice water, it was still warm. The contents of the cup was shown by chemical analysis to contain 21.9 grams of cocaine that was 91 percent pure. Officer Stark recalled that he had seen Appellant at the Gardner house before, but acknowledged that Appellant had not been previously arrested there.

Testifying in his own behalf, the 38 year old Appellant stated that he had been out most of the night, and his girlfriend had dropped him off at the Gardner house about 7:30 or 8:00 a.m. on February 19. He wanted to take a nap before an appointment he had later as a hairstylist. Appellant acknowledged that Gardner was a friend of his, that he had been to the house on other occasions, and that Appellant's father lived next door. Appellant admitted

Court of Appeals, and Raleigh Brown, Justice (Retired), Eastland Court of Appeals, sitting by assignment of the Chief Justice of the Texas

Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

that he had heard rumors that Gardner was a bootlegger and sold cocaine. He knew the house had been raided previously, and that Gardner had been tried and convicted, but he was still a friend of Gardner's.

Appellant testified that Gardner admitted him to the house. He saw no one else, and went into the living room to take a nap on the couch. Three hours later, he heard a disturbance and a police officer entered the living room and arrested him. He was later taken to the den area where the others were being detained. Appellant denied knowing anything about the cocaine found in the house. No contraband was found on his person and he was not under the influence of any narcotic drug.

Gardner testified for the defense. He corroborated Appellant's claim that Appellant was asleep in the living room. Gardner admitted he was cooking cocaine in the kitchen at the time of the execution of the search warrant. He ran to the bedroom to escape the officers. Gardner denied that Appellant was assisting him. He freely admitted he had been in the business of selling cocaine and that he had been convicted twice for possession of the controlled substance, including the offense with which Appellant was charged.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.App.1989); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App. 1984). The standard for review is the same in both direct and circumstantial evidence cases. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Cr.App.1987); *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Cr.App.1986). In reviewing the sufficiency of the evidence, an appellate court's role is not to reweigh

the evidence as a thirteenth juror. *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex.Cr.App.1989) (on State's motion for rehearing).

[2, 3] A conviction based upon circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Cr.App.1987); *Burns v. State*, 676 S.W.2d 118, 120 (Tex.Cr.App. 1984). Proof which amounts only to strong suspicion or mere probability of guilt is insufficient to support a conviction. *Humason*, 728 S.W.2d at 366; *Moore v. State*, 640 S.W.2d 300, 302 (Tex.Cr.App.1982). If, after viewing the evidence in this light, there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Cr.App.1988); *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Cr.App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).[2]

In order to prove unlawful possession of a controlled substance, the State must prove the accused (1) exercised care, control and management over the contraband, and that (2) the accused knew the substance he possessed was contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Cr. App.1986); *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Cr.App.1981). Possession of contraband need not be exclusive, and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Cr.App.1985); *Oaks v. State*, 642 S.W.2d 174, 176 (Tex.Cr.App. 1982); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Cr.App.1981).

Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband by a showing which indicates the accused's knowledge and control of the contraband. *Waldon v. State*, 579 S.W.2d

---

2. *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App. 1991), has now abolished the reasonable hypothesis construct, but the *Geesa* holding is ap-

plicable only to cases tried after November 6, 1991. *Geesa* is not to be applied retroactively. The instant case was tried in March, 1990.

499, 501 (Tex.Cr.App.1979). The burden of showing an affirmative link or links rests upon the State. *Damron v. State,* 570 S.W.2d 933, 935 (Tex.Cr.App.1978). The mere presence of a defendant at the scene of an offense does not alone make him a party to joint possession. *Oaks,* 642 S.W.2d at 177. It has been said that possession means more than being where the action is. *Id.; Brown v. State,* 481 P.2d 475, 477 (Okla.Cr.App.1971). Where the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Wiersing v. State,* 571 S.W.2d 188, 190 (Tex.Cr.App.1978).

Affirmative and relevant facts linking an accused to the contraband have been noted and listed in several opinions. *See e.g., Martin v. State,* 753 S.W.2d 384 (Tex.Cr. App.1988); *Guiton v. State,* 742 S.W.2d 5, 8 (Tex.Cr.App.1987); *see also Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.— Houston [1st Dist.] 1989, pet. ref'd); *Trejo v. State,* 766 S.W.2d 381, 384–85 (Tex. App.—Austin 1989, no pet.). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Johnson v. State,* 658 S.W.2d 623, 627 (Tex. Cr.App.1983).

█ The Appellant was not an occupant of the premises in question, there was no contraband on his person, he was not under the influence of a controlled substance, and he made no incriminating statement at the time. These normal affirmative links were not present. The fact that the contraband was in plain view of the defendant or was in close proximity or readily accessible to the defendant are however affirmative links. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Cr.App.1981); *Hernandez v. State,* 538 S.W.2d 127, 131 (Tex.Cr.App.1976); *Hahn v. State,* 502 S.W.2d 724, 725 (Tex. Cr.App.1973). The amount of cocaine or other controlled substance may be large enough to indicate that the Appellant knew

of its presence. *Pollan,* 612 S.W.2d at 596; *Carvajal v. State,* 529 S.W.2d 517, 520–21 (Tex.Cr.App.1975), *cert. denied,* 424 U.S. 926, 96 S.Ct. 1139, 47 L.Ed.2d 336 (1976). An affirmative link may be shown if the accused is closely related to other persons in joint possession of the contraband or to those who owned or leased the premises where the contraband was found. *Hernandez v. State,* 538 S.W.2d at 130. Flight, particularly when taken in connection with other circumstances, may be sufficient to raise an inference of guilt. *Carvajal,* 529 S.W.2d at 520.

Officer Stark saw three men in the kitchen through a window. They were within "arm's reach" of where the cocaine was found. He testified that the three men were in close proximity to 21.9 grams of cocaine in the kitchen sink. The cocaine was readily accessible to the three men and was in plain view. The three men fled from the kitchen when the officers entered. According to Officer Stark, Appellant was one of the three men. Appellant knew the house had been raided, he knew Gardner's reputation and that Gardner had been convicted for a cocaine offense. Appellant continued to frequent the house and maintained his relationship with Gardner. Appellant had been at the house about three hours before the raid in question. Gardner admitted a batch of crack cocaine had just been made. Appellant's claim that he was in the living room was refuted by Stark's testimony that no one was found there.

█ The jurors are the triers of fact, the judges of the credibility of the witnesses and of the weight to be given their testimony. TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979). The jurors may believe or disbelieve any or any part of a witness' testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Cr.App.1984). Reconciliation of any conflicts in the evidence of circumstantial evidence is within the province of the jury. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Cr.App.1982). The "rule that evidence must exclude every reasonable hypothesis of innocence refers to evidence which the jury believes and relies upon to support its verdict." *State v. Poel-*

*linger*, 153 Wis.2d 493, 451 N.W.2d 752, 756 (1990).

■ We conclude, viewing the evidence in the light most favorable to the jury's verdict, and accepting all credibility choices and reasonable inferences made by the jury, that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense. *United States v. Bland*, 653 F.2d 989, 995 (5th Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981). Appellant's second point of error is overruled.

In his first point of error, Appellant contends that the trial court erred in overruling his *Batson* motion, more particularly in holding that he did not make the requisite prima facie showing. *See Rousseau v. State*, 824 S.W.2d 579, 581 (Tex.Cr.App. 1992).

■ The State's exercise of peremptory challenges for purely racial reasons violates the Equal Protection Clause of the UNITED STATES CONSTITUTION. *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965). In *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court recognized that a defendant in a criminal case may make a prima facie showing of purposeful racial discrimination in jury selection by relying solely on the facts concerning the jury's selection in his case. In order to establish a prima facie case, the defendant under *Batson* must show the following: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the jury on account of their race. In addition, the defendant can rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. *Batson*, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Cr.App.1987) (Keeton I).[3]

■ In the instant case, Appellant made his *Batson* motion after the jury was selected but before it was sworn, although the venire had just been dismissed. The motion was timely made. *See* TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989); *Hill v. State*, 827 S.W.2d 860 (Tex.Cr.App. 1992) (rehearing denied April 15, 1992).

Appellant's counsel pointed out to the trial court that Appellant was a member of the black race, and that veniremen Margaret Clark Webb, prospective juror No. 12, and Thurman Carey, prospective juror No. 25, were the only black veniremen, and that the State had exercised its peremptory challenges to eliminate them from the jury chosen. The trial court immediately ruled that no prima facie showing had been made so as to require the prosecutors to make any racial-neutral explanations for their jury strikes. In an attempt to offer proof or perfect an informal bill of exception, Appellant's counsel asked for a stipulation or that the trial court accept his statements. The trial court accepted Appellant's counsel's statements. Appellant now asserts that the prosecutors never even interrogated Webb and Carey during the voir dire examination.

■ As recognized in *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex.Cr.App. 1989), the initial burden in establishing a prima facie case of discrimination is not onerous. Having established that the State excluded all blacks from the jury, the black appellant established a strong prima facie case of purposeful discrimination. *Woods v. State*, 801 S.W.2d 932, 936 (Tex. App.—Austin 1990, pet. ref'd); *see also Salazar v. State*, 795 S.W.2d 187, 193 (Tex. Cr.App.1990); *Dewberry*, 776 S.W.2d at 591; *Miller–El v. State*, 748 S.W.2d 459 (Tex.Cr.App.1988).

This cause is remanded to the trial court in order that the trial court may conduct a *Batson* hearing. At the conclusion of the

**3.** The prima facie requirements have been relaxed. *See Powers v. Ohio*, ─── U.S. ───, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also State v. Oliver*, 808 S.W.2d 492 (Tex.Cr.App. 1991); TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989).

**716**

hearing, the trial court shall make its findings of facts and conclusions of law, and transmit the same, and the record made to this Court.

---

**1.** The panel before whom this cause was submitted consisted of John F. Onion, Jr., Presiding Judge (Retired), Court of Criminal Appeals, Stephen F. Preslar, Chief Justice (Retired), El Paso Court of Appeals, and Raleigh Brown, Justice (Retired), Eastland Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).