Tony WATSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–263 CR.

Court of Appeals of Texas, Beaumont.

Aug. 11, 1993.

Discretionary Review Refused Dec. 15, 1993.

David M. Koppa, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. DeWitt, Rodney D. Conerly, Asst. Crim. Dist. Attys., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was found guilty by a jury of the felony offense of Possession of a Controlled Substance (Cocaine). The trial court assessed punishment at fifteen (15) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises three points of error on appeal, *viz:*

> I. The trial court erred in denying defendant's motion for judgment of acquittal on grounds that there was no affirmative link between defendant and the cocaine.

II. The trial court erred in denying defendant's motion for judgment of acquittal on grounds the State's case was based upon building an inference upon an inference; alternatively, the State's proof amounts to mere suspicion or probability.
III. The trial court erred in overruling defendant's motion to suppress the fruits of the search.

We recognize at the outset that an appellant who challenges the trial court's denial of a "motion for judgment of acquittal" is akin to a challenge of the denial of a motion for instructed verdict by an appellant in that both are actually a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). The appellate standard for reviewing questions of evidentiary sufficiency is for the Court to view all of the evidence in the light most favorable to the prosecution and then determine whether any rational trier of fact could have found each of the essential elements of the offense to have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991). In the instant case, the evidence of appellant's criminal culpability is entirely circumstantial. Since the trial took place on September 28, 1992, our review of the evidence of appellant's possession of the contraband will not involve the "alternative reasonable hypothesis" construct rejected in *Geesa*. This also means that in our examination of the evidence for sufficient affirmative links, we need not consider whether the State eliminated every reasonable hypothesis other than appellant's guilt in circumstantially proving their case. *Rogers v. State*, 846 S.W.2d 883, 885 (Tex.App.—Beaumont 1993, no pet.).

"Circumstantial evidence" has been defined as direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven. *Taylor v. State*, 684 S.W.2d 682, 684 (Tex.Crim.App.1984). The State's evidence in the instant case attempted to prove appellant's possession of the contraband circumstantially. A person commits such an offense if he "knowingly or intentionally possesses a controlled substance...." TEX.HEALTH & SAFETY CODE ANN. sec. 481.115(a) (Vernon 1992). "Possession" is defined as actual care, custody, control, or management of the substance. TEX. HEALTH & SAFETY CODE ANN. sec. 481.002(38) (Vernon 1992). Possession of contraband need not be exclusive, and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). However, the mere presence of the accused at the scene of an offense or even knowledge of an offense does not make one a party to joint possession. *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex. Crim.App.1981).

If the evidence indicates that the accused is not in exclusive possession of the premises where the contraband is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Herndon v. State*, 787 S.W.2d 408, 409–410 (Tex. Crim.App.1990). Indeed, it is the *affirmative link* which generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983); *Redman v. State*, 848 S.W.2d 710, 714 (Tex.App.—Tyler 1992, no pet.). The burden of showing said affirmative link rests upon the State. *Damron v. State*, 570 S.W.2d 933, 935 (Tex.Crim.App. 1978).

We now turn to a somewhat detailed rendition of the evidence ever mindful that in reviewing said evidence our role is not to reweigh the evidence as a thirteenth juror. *Blankenship v. State*, 780 S.W.2d 198, 206–207 (Tex.Crim.App.1989) (opinion on rehearing). The State's evidence concerning appellant's connection to the contraband was based entirely on the testimony of the two police officers involved in the incident, Officer James Callesto and Officer Roger Ross. Officer Callesto testified first and indicated that on December 23, 1991, at about 11:15

p.m., he was dispatched to the Roadrunner Motor Inn, Room 203. He further indicated that before going to Room 203, he went to the front desk of the motel. At the front desk, Officer Callesto viewed the "check-in card" for Room 203. The card indicated that Room 203 was registered to a Jimmy Burrows.[1] The card further indicated that Burrows checked in earlier that same day. While at the front desk, Officer Callesto was asked by the motel clerk to speak to someone on the telephone. The caller apparently represented himself to be Burrows. Officer Callesto testified that he ran a warrant check on Burrows and discovered an active warrant for the offense of Driving While Intoxicated.

The officers then proceeded to Room 203 to arrest Burrows if he was present based on the active D.W.I. warrant, and to remove all other individuals as Burrows was the only person registered to that room. Officer Callesto identified appellant as the individual who answered the door to Room 203. Officer Callesto stated that appellant identified himself and told Officer Callesto that Burrows was not in the room. At this point, Officer Callesto stated that he (Callesto) observed a female in the room behind appellant move hurriedly into the bathroom. Seeing this somewhat furtive movement, Officer Callesto stated he feared for his safety so he stepped into the room in order to check the bathroom to make sure the female was not going for a weapon. As the officer stepped into the room, appellant moved back from the doorway and the female was requested to step out of the bathroom. The first thing Officer Callesto noticed as he entered the room was a homemade crack pipe located on one of the beds in plain view. Based on his experience as a police officer, Officer Callesto described for the jury how such pipes are used to ingest crack cocaine. He indicated that smoking crack cocaine from said pipe would cause the pipe to warm up. Officer Callesto further stated that when he touched the crack pipe located on the bed he found it to be warm to the touch.

At this point, both appellant and the female were arrested for possession of drug paraphernalia. Officer Callesto indicated

that the smoke detector in Room 203 had been removed from its location on the ceiling and the battery taken out. He explained that based on his experience and training as a police officer the removing and disabling of the smoke detector was consistent with "a lot of smoke—there can be a lot of smoke caused by smoking cigarettes or crack cocaine." Officer Callesto then watched appellant and the female while Officer Ross conducted a search of the room.

On cross-examination, Officer Callesto admitted that appellant was not seen using the crack pipe; that no fingerprints were taken from the crack pipe; that no taped conversations between appellant and anyone else existed; that Officer Ross found marihuana in the female's purse located in the bathroom; that appellant had no contraband on his person; that no fingerprints were taken from the baggy in which the cocaine was found; that no documents were found in the room; that no large amount of money was found; that it was unknown when the smoke detector had been disabled or who disabled it; that it was unknown who had been smoking the warm crack pipe; and that it was unknown as to when appellant arrived at Room 203 or how long appellant had been in the room before the officers arrived.

Officer Ross was the next witness called by the State. As Officer Ross and Officer Callesto were together during the incident in question much of Officer Ross's testimony mirrors that of Officer Callesto. We will discuss any testimony of Officer Ross that is noticeably distinguishable from Officer Callesto's. Up to the point where appellant and the female were arrested for possession of drug paraphernalia, the actions and observations of both officers were essentially identical. At that point, Officer Ross personally conducted the search of the room. Initially looking "around the bed area," Officer Ross located a bag "just under the edge of the bed that the crack pipe was on." The bag contained several books of matches, some Brillo pads, another baby food jar, a crack pipe, and a "straight shooter" crack pipe. The bag and its contents were admitted into evidence as State's Exhibit 3. Officer Ross indicated

1. The card was admitted into evidence as State's Exhibit 1.

that none of the items in the bag were submitted to the crime lab for testing. This included State's Exhibit 4 which was the warm crack pipe initially observed by the officers on one of the beds. Officer Ross then complied with the State's request to describe how each item contained in the bag was used for the ingestion of cocaine. Somewhat significant was Officer Ross's remark that the "huge" box of matches was also for use of crack cocaine as "[i]t takes a lot of fire to keep it going."

Officer Ross then indicated that a patdown search of appellant upon his arrest turned up no weapons, no suspected paraphernalia, and no controlled substances on appellant's person. Officer Ross further stated that although the female had no contraband on her person either, a small amount of marihuana in plastic bags was found in her purse located in the bathroom. After thoroughly searching the bathroom, Officer Ross then went back into the room and specifically to the dresser. The dresser was described as a small chest of four drawers. In the upper left-hand drawer, Officer Ross found a small plastic bag containing a white powdery substance believed to be cocaine, and a white plastic bottle containing 12 crystalline rocks believed to be crack cocaine.

On cross-examination, Officer Ross admitted that he did not see appellant handle any of the items admitted as State's Exhibits 3 and 4; that appellant was not seen handling the cocaine found in the dresser drawer; that no fingerprinting was attempted on the cocaine found in the dresser drawer; and that it was unknown as to why appellant was in Room 203. On re-direct examination, Officer Ross was permitted to testify that a third reason for he and Officer Callesto's presence at Room 203 was to "check for the sale of narcotics." This reason was neither explained nor elaborated on in the jury's presence. With this, the testimony of the fact witnesses to the incident in question came to an end. The appellant did not testify personally nor did he call any witnesses in his behalf. At the close of all of the testimony, the following agreed stipulation was read into the record before the jury by appellant's counsel:

> I'd just like to offer a stipulation to the jury that Sharon Patterson, also known as Jasmine Morris, who was the person—the black female arrested as part of the arrest that's in question in this case pled guilty to possession of cocaine, the cocaine that was found in this offense.

The trial court then instructed the jury that they were to take that stipulation "as a fact proven."

█ The affirmative link customarily emerges from an orchestration of several of a list of factors and the logical force they have in combination. *Trejo v. State*, 766 S.W.2d 381, 385 (Tex.App.—Austin 1989, no pet.). Relevant facts and circumstances that provide a sufficient link between an appellant and the contraband have been noted and listed in several opinions, including *Whitworth v. State*, 808 S.W.2d 566 (Tex.App.—Austin 1991, pet. ref'd). Although *Whitworth* involved possession of marihuana in the setting of a motor vehicle, the list of factors with regard to the separate elements of *knowledge* and *care, custody, control, and management* are quite relevant and can be easily translated to the physical setting that confronts us in the instant case. The *Whitworth* Court enumerated the factors as follows:

> Factors to be considered include whether: (1) the contraband was in plain view; (2) the contraband was conveniently accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the accused was the driver of the automobile in which the contraband was found; (5) the contraband was found on the same side of the car seat as the accused was sitting; (6) the place where the contraband was found was enclosed; (7) the strong odor of marijuana was present; (8) paraphernalia to use the contraband was in view of or found on the accused; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had a special connection to the contraband; (11) occupants of the automobile gave conflicting statements about relevant matters; (12) the physical condition of the accused indicated recent consumption of the contraband found in the car; (13)

traces of the contraband were found on the accused; and (14) affirmative statements connect the accused to the contraband. (footnote omitted).

*Whitworth,* 808 S.W.2d at 569. An accused's attempt to flee is also a factor that can be considered. *Herndon,* 787 S.W.2d at 410.

In placing the above fifteen factors in the context of the record before us, we observe the following: (1) the contraband was not in plain view; (2) the contraband was conveniently accessible to the appellant; (3) the appellant was not the registered occupant of Room 203; (4) appellant answered the door which may indicate to a degree some control over the room; (5) it is unclear from the testimony just exactly how close appellant was to the dresser drawer at any given time; (6) the place where the contraband was found was enclosed; (7) there was not a strong odor or residual smoke indicating recent smoking of crack cocaine; (8) paraphernalia to use the contraband was in view of the appellant; (9) the appellant's conduct as described by the officers did not indicate a consciousness of guilt; (10) there was no testimony that the appellant had any special connection to the contraband; (11) neither appellant nor the female gave any statements at all much less conflicting statements; (12) no testimony was elicited as to appellant's physical condition so as to indicate recent ingestion of the contraband found in the dresser drawer; (13) no trace of contraband was found on the person of appellant; (14) no affirmative statements of any kind were made by anyone connecting appellant to the contraband; and (15) appellant did not attempt to flee at any point during the search and discovery of the contraband in the dresser drawer. Additional facts for consideration were the testimony concerning the disconnected smoke alarm, and the officers' inability to say when appellant had arrived at Room 203 or how long he was there before the officers arrived.

■ An analysis of the above factors in light of the relevant case law is now in order. Recall that since appellant was not in exclusive control of Room 203 we cannot conclude that he had knowledge of or control over the contraband unless the factors which we are

about to discuss permit us to reasonably infer that appellant did have knowledge of and control over the contraband in the dresser drawer. *Herndon, supra; Johnson, supra.* To put it another way, only if the factors combine to form an affirmative link between appellant and the contraband may we then infer the knowledge and control elements of the State's case were proven.

In the instant case, the factors tending to link appellant to the contraband consist of: (a) the contraband being conveniently accessible to the accused; (b) indication of appellant's exercise of control over the room by his answering the door; (c) the place where the contraband was found was enclosed; (d) paraphernalia to use the contraband was in view of appellant; and (e) the smoke alarm had been manually disconnected.

Appellant, in his brief, cites us to and relies heavily on *Herndon, Rhyne* and *Cude v. State,* 716 S.W.2d 46 (Tex.Crim.App.1986). Each is factually distinguishable from the instant case. In *Herndon,* no testimony placed the defendant in the house where the contraband was located. In the instant case, appellant was physically present and exercised control over the room in which the contraband was located. Appellant was also knowledgeable of the warm crack pipe. In *Rhyne,* while the defendant apparently had knowledge that extensive drug dealing was going on in the house in question involving other occupants of the house, the defendant apparently was never involved in actually possessing or selling the contraband. In the instant case, because of appellant's control of the premises and actual knowledge of the warm crack pipe, both knowledge and control of the contraband may be inferred. Finally, in *Cude,* undercover police went to an apartment on the pretext of asking directions. The officers were invited in and the defendant sold them a completely different controlled substance from that later discovered by police and for which the defendant was convicted. The Court of Criminal Appeals found insufficient evidence of control of the apartment on the defendant's part and reversed his conviction. In the instant case, appellant answered the door to Room 203 and was able to tell officers that the regis-

tered occupant, Jimmy Burrows, was not present in the room. Along with the presence, in plain view, of the warm crack pipe, which the officers indicated was used *only* to ingest cocaine, a reasonable inference of control of the room and knowledge of the cocaine in the chest of drawers may be inferred by any rational trier of fact. We find the evidence sufficient to sustain the conviction. Points of error one and two are overruled.

■■ The crux of appellant's third point of error is the claim that the officers did not have a legitimate reason for the initial intrusion in the motel room at the time the drug paraphernalia was observed in plain view.[2] Appellant contends that once the officers learned that Jimmy Burrows was not in the room, "their reason for entering the room narrows down to forcing the unregistered guests out." In making such a contention, appellant obviously overlooks significant testimony of Officer Callesto regarding the furtive movements of appellant's female companion in the room.

■■■ Officer Callesto listed two reasons for entering the room after observing the female hurriedly move to the bathroom. First, the officers had already been requested to remove all parties from the room who were not registered as the registered guest, Jimmy Burrows, was not present in the room. Second, because of the swiftness of the female's movement into the bathroom behind appellant, Officer Callesto felt that officers' safety mandated entry into the room to make sure that the female was not attempting to secure a weapon from the bathroom. An officer conducting an investigatory stop need only have a reasonable belief, not probable cause, to conduct a self-protective search. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Worthey v. State*, 805 S.W.2d 435, 437 (Tex.Crim.App. 1991). Such a protective search for weapons may extend beyond the person, even in the absence of probable cause. *Worthey*, 805 S.W.2d at 437–438. In the instant case, the officers were fully justified in entering the room and securing the female and the items

located in the bathroom for their own personal safety. As such, the officers had a legitimate reason to be where they were when they observed the crack pipe, a readily apparent contraband item. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). Because we find justification for the officers' entry into the motel room, we need not discuss the issue of whether or not appellant consented to the officers' entry nor the scope of an arrest warrant's authority with regard to police entry into dwellings. Appellant's third point of error is overruled and the judgment and sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority finds justification for the officers' entry into the motel room; I do not. The majority and I have no great dispute about the applicable law or the facts of this case. The application of the law to the facts is our dispute.

We do not disagree that the motel room enjoyed Fourth Amendment protection. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861 (1964) held that: "No less than a tenant of a house, or the occupant of a room in a boarding house, [citation omitted], a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures," citing *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). *See also United States v. Killebrew*, 560 F.2d 729 (6th Cir.1977). The Texas Court of Criminal Appeals in *Moberg v. State*, 810 S.W.2d 190 (Tex.Crim.App.1991), recognized the holding of *Stoner* concerning the status of a hotel guest and reaffirmed the earlier holding of *Tarwater v. State*, 160 Tex.Crim. 59, 267 S.W.2d 410 (1954), that same was true under TEX. CONST., art. I, § 9.

We do not disagree that absent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search. *United States*

---

**2.** A very careful reading of appellant's brief does not indicate any complaint with the subsequent search of the motel room and, thereafter, the

seizure of the contraband located inside the chest of drawers. Said issues will be left untouched for purposes of this appeal.

*v. Morgan,* 743 F.2d 1158, 1161 (6th Cir. 1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985), citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

We do not disagree that the burden of justifying a warrantless entry into a private home or motel room is upon the Government, *Killebrew,* 560 F.2d at 733, citing *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

We do not disagree that the initial intrusion must be proper, in other words, that the police have a right to be where they are when the discovery is made. *State v. Haley,* 811 S.W.2d 597, 599 (Tex.Crim.App.1991), recognizing the rule of *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971).

Some courts have called the majority's justification the cursory safety check exception. To satisfy the cursory safety check exception the government must show that there was a serious and demonstrable potentiality for danger. *Morgan,* 743 F.2d at 1162, citing *United States v. Kolodziej,* 706 F.2d 590 (5th Cir.1983), quoting *United States v. Smith,* 515 F.2d 1028 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 (1976). *Smith,* 515 F.2d at 1031, says courts will strictly scrutinize such alleged precautionary searches to insure there exists a serious and demonstrable potentiality for danger.

*Kolodziej* was a case which found no justifiable cursory safety check. The court stated an officer must have reasonable grounds to believe that there are other persons present inside who might present a security risk, citing *United States v. Sheikh,* 654 F.2d 1057, 1071 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982), *overruled on other grounds* in *United States v. Zuniga–Salinas,* 952 F.2d 876 (5th Cir. 1992). It acknowledged what are reasonable grounds is no easy question. It held a cursory safety check is permissible when the circumstances provide, at the least, probable cause to believe that a serious threat to safety is presented, citing *United States v. Cravero,* 545 F.2d 406, 418 (5th Cir.1976),

*cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977).

In *Killebrew,* 560 F.2d at 729, the police were notified by the motel clerk that a man had a gun in a room. The police went to the room and knocked on the door. The guest unlocked the door and stepped into the hallway. When asked for identification the guest walked back into the room and the officer followed "five or six" feet into the room where he saw the gun laying on the bed. The court said the critical time as of which the Fourth Amendment question must be determined is the moment of the warrantless entry by the officers into the motel room. *Id.* at 733. At that time the officer only knew the occupant had a gun. There was no evidence the occupant was known to be dangerous. The court held the entry violated the Fourth Amendment.

*Mitchell v. State,* 756 S.W.2d 71, 75 (Tex. App.—Texarkana 1988, no pet.), discussed the cursory safety check, citing *Kolodziej.* The court held an invalid check under these facts. Officers went to a residence and used a loudspeaker to order the occupants from the house. Mitchell and two others came outside. Mitchell was arrested for unauthorized use of a vehicle. Mitchell asked one of the other occupants, Wilkins, to lock the front door of the house. An officer stated he was going to accompany Wilkins. The officer testified he had no knowledge of Wilkins, but had arrested Mitchell for possession of a weapon and had been told Mitchell kept firearms in the home. The officer testified he was concerned that if Wilkins went into the house unescorted, he might come out with a firearm. Wilkins went into the home and the officers stepped inside the front door. Once inside they detected the odor of marijuana and noticed drug paraphernalia on the floor. The court held there was no serious threat to the officers' safety, citing *Morgan,* 743 F.2d at 1158, and reversed the conviction.

A case cited by the majority, *Worthey v. State,* 805 S.W.2d 435, 439 (Tex.Crim.App. 1991), is factually distinguishable. After being told not to move, appellant made a sudden move which obstructed the officer's view of her hand and purse. Based upon this, the court found "a specific articulable suspicion"

to fear appellant could be armed and dangerous.

At the motion to suppress hearing Officer Callesto testified he could only see a corner of the bed from outside the motel room. It was only when they were about three or four feet in the doorway that they could observe the entire bed. As to Sharon Patterson: "She had crossed over and went into the bathroom while we were talking to Mr. Watson", "He stepped back a couple of feet ... When he stepped back and Sharon went into the bathroom, I stepped in approximately three to four feet. I told her that she needed to step out of the bathroom, just for our safety, so we could talk to everybody in the room." When questioned by the prosecutor whether Sharon Patterson or Tony Watson made any attempt to bar their entry, Officer Callesto testified they did not. Officer Ross testified he went into the room "to clear out the room."

At the conclusion of the motion to suppress hearing the state's argument was: "The officers had a right to proceed to the room. No effort was made to bar the entry by the defendant or Sharon Patterson. When they saw the crack pipe, they had authority to arrest...." The court, in ruling, stated: "And upon knocking on the door of the room, the defendant answered the knock and answered that he was not Mr. Burrows and made no attempt to keep the officers out of the room.... After entering the room, the officers noticed a pipe on the bed...." It is apparent both the trial prosecutor and the trial judge placed major emphasis on Watson's failure to bar or somehow deny the officers' entry into the room. However, *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797, 802 (1968), held that simple acquiescence to a claim of lawful authority · is not consent. Thus, consent is not an issue in this entry.

The state, in its brief, does not even address the cursory safety check exception. It treats the officers' entry in the room thusly: "Officers Collesto and Ross had authority to enter that room because they had reason to believe Jim Burrows who had rented the room would be there. *Payton v. New York* [citation omitted]. Once justifiably in the room Officers [sic] immediately saw drug paraphernalia."

The record is completely amazingly silent as to any objective facts from which Officer Collesto concluded he needed to enter the room for his safety. Both Watson and Patterson were unknown to him. Unlike *Killebrew*, he had no information concerning weapons in the room. At the time the officers entered the room, Ms. Patterson's movements were not in themselves threatening nor in violation of any order or request by the officers, e.g. *Worthey*, 805 S.W.2d at 435. Under Officer Collesto's and the majority's logic, any time an officer saw an individual move inside a house or room, however innocent that movement might be, the officer would be authorized to enter.

An insightful case is *Riddick v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the companion case to *Payton v. New York*. In *Riddick* the officers went to his house to arrest him, without a warrant, for two robberies. They knocked on the door and it was opened by Riddick's 3-year-old son. The officers saw Riddick sitting in bed. They entered the house, arrested Riddick and in a search for weapons, opened a chest of drawers two feet from the bed where they found drug paraphernalia. In discussing Riddick's case, the court noted the police entered before Riddick had an opportunity either to object or to consent. 445 U.S. at 583, 100 S.Ct. at 1378, 63 L.Ed.2d at 649. The court noted "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed'", 445 U.S. at 585, 100 S.Ct. at 1379, 63 L.Ed.2d at 650, citing *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). The court stated, "... the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653. The court held the entry was prohibited.

The Fourth Amendment is not a hollow statement that must give way simply to claimed officer safety. I do not intend to minimize the danger officers face each and

every time they encounter unknown individuals in unknown places. However, precedent requires this court to strictly scrutinize such alleged precautionary searches to insure there exists a serious and demonstrable potentiality for danger. Moreover, as noted in *Riddick*, the entrance to a home or motel room is an important threshold. In this case, the record does not reveal any exigent circumstances which rise to the level of serious and demonstrable potentially for danger.

Consequently, I would hold the trial court erred in overruling appellant's motion to suppress and reverse and remand for a new trial.