Opinion issued August 7,
2008

 

     

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-00995-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SEDRICK RAMORE LAVIGNE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 108th District Court

Harris County, Texas

Trial Court Cause No. 0199865

 

















MEMORANDUM OPINION

 

A jury found Sedrick Ramore Lavigne
guilty of possession with intent to deliver a controlled substance, namely,
cocaine, weighing more than four grams and less than 200 grams.  After finding
true two enhancements for prior felony convictions, the jury assessed
punishment at sixty years’ confinement.  In two issues, Lavigne contends that
the evidence is legally and factually insufficient to support his conviction.[1] 
We affirm.

Background

          At about 6:45 pm on January
10, 2007, Houston Police Department Officer B. Gill and five members of his
squad executed a search warrant for the residence at 3509-1/2 Reeves in Houston, Texas.  The warrant did not specifically name any owner or occupants of the
residence.  When the officers pulled up to the house, they saw a man named Berry standing outside the doorway talking to someone through the screen door.  The wooden
door was open, but the officers could not see to whom Berry was speaking.  As
soon as Officer Gill exited the van, Berry walked away from the door, and the
man inside the house slammed shut the wooden door.  Berry was detained and
searched by perimeter police, then released after they determined that he had
no contraband.  

Officer Gill and his team banged on
the door, announcing themselves as “Houston Police.”  When no response came,
the police struck down the door with a battering ram.  Officer Gill entered the
residence, holding a shotgun.  Five officers followed with handguns.  They
discovered a man named Johnson on a couch.   When ordered to do so, Johnson
immediately raised his hands and dropped to the floor in front of the couch. 
Next, the officers saw Lavigne standing inside the kitchen next to the stove. 
While the officers yelled for him to get down, Lavigne jogged down the narrow
hallway towards the officers with his arms up.  At the end of the hallway he
slowly lowered himself onto the floor until he was lying lengthwise across the
middle of the hallway.  Officer Vanderberry testified that when Lavigne went
down onto the floor, he did so in a fashion similar to “a chop block on
somebody.”[2]  Officer Gill had to push
Lavigne down to the floor and step on him to get past.  As Lavigne confronted
the police, another man, Derrick Boone, came running out of the bathroom
towards the kitchen, but he was detained while attempting to go out the back
door.  

The police did not find contraband on
Lavigne, Johnson, or Boone.  On top of the stove in the kitchen, however, they
found approximately 3 grams of crack cocaine and 54 grams of powder cocaine
next to a metal measuring cup, a whisk, and a knife, all in plain view.  In the
bathroom, the police found a Pyrex measuring cup and approximately 41 grams of
partially processed crack cocaine in the toilet, as well as a box of latex
gloves and plastic sandwich bags, items that crack cocaine producers commonly
use for “wholesaling,” or packaging quantities of crack for sale to smaller
dealers, for those dealers, in turn, to divide into smaller amounts for
distribution to end users.  The police also found a document establishing that
Boone leased the house.  No mail, clothing, or other property belonging to
Lavigne was found at the residence.  

During the punishment phase, the
state offered evidence of Lavigne’s extensive criminal history, including nine
felony drug convictions and seven misdemeanor convictions for various
offenses.  

Sufficiency of the Evidence

Standard of Review

When evaluating the legal sufficiency
of the evidence, we view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175
S.W.3d 795, 798 (Tex. Crim. App. 2005).  The standard is the same for both
direct and circumstantial evidence cases.  King v. State, 895 S.W.2d
701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421–22 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991) (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988)).  Instead, we determine whether both the explicit and implicit findings
of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict and resolving any inconsistencies in
the evidence in favor of the verdict.  See Matson, 819 S.W.2d at 843
(quoting Moreno, 755 S.W.2d at 867).  

When evaluating factual sufficiency,
we consider all the evidence in a neutral light to determine whether the jury
was rationally justified in finding guilt beyond a reasonable doubt.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We set the verdict
aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot conclude that a
verdict is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson, 204 S.W.3d at 417.  Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  Id.  We must also discuss the
evidence that, according to the appellant, most undermines the jury’s verdict. 
See Roberts v. State, 221 S.W.3d 659, 665 (Tex. Crim. App. 2007). 

Possession of a Controlled Substance 


A defendant is guilty of
second-degree felony possession if he knowingly or intentionally possesses a
controlled substance, in an amount greater than four grams and less than 200
grams.  Tex. Health & Safety Code
Ann. § 481.115(d) (Vernon 2003).  Cocaine is a controlled substance as
defined by the statute.  Tex. Health
& Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2007).  

The state must show that Lavigne (1)
exercised care, custody, control, or management over the contraband, and (2)
knew that he possessed contraband.  Edwards v. State, 178 S.W.3d 139,
143 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  If Lavigne does not have
exclusive possession of the place where the contraband is found, we may not
conclude that he had knowledge of and control over the contraband unless
additional independent facts and circumstances affirmatively link him to the
contraband.  Id.  It is not enough to show that Lavigne was merely
present in the vicinity of the controlled substance.  Roberson v. State,
80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  The state
must show additional links between Lavigne and the contraband.  Cedano v.
State, 24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
 

Lavigne argues that the evidence is
legally and factually insufficient to support his conviction because there are
a number of links missing.  Lavigne was not the owner of the house, he was not
the only person present, and there was no personal property belonging to him at
the scene.  Lavigne was not under the influence of a controlled substance and
no drugs, money, or weapons were found on him.  Further, Lavigne did not make
any furtive gestures, and no one testified that the odor of drugs was present. 
The probative value is not in the number of factors met, however, but in the
“logical force” of the totality of the factors.  Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  A court thus
should not focus on the absence of affirmative links, but rather should
consider the logical force of links that are present.  Hurtado v. State,
881 S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (emphasis
in original).  

Here, several factors link Lavigne to
the cocaine.  First, Lavigne was found inside of a residence that Officers Gill
and Vanderberry testified was equipped with the extra security associated with
a house dedicated to manufacturing crack.  The officers testified that not just
anybody is allowed into these houses, meaning that only individuals actually
involved in the manufacturing process or others known and trusted by the
manufacturers could gain entry.

Second, the record reflects that at
the time the police observed him, Lavigne was standing in the kitchen within arm’s
reach of approximately 54 grams of powder cocaine and 3 grams of crack cocaine,
in plain view on top of the stove.  Next to the cocaine, police found a metal
measuring cup, a whisk, and a knife—tools commonly used for processing powder
cocaine into crack cocaine.  Lavigne’s proximity to the contraband and
processing paraphernalia, as well as the fact that the contraband and other
items were in plain view, are two strong links.  See Evans v. State,
202 S.W.3d 158, 163–66 (Tex. Crim. App. 2006) (holding that evidence was
sufficient to support possession conviction where cocaine was in arm’s reach in
plain view directly in front of appellant).

Third, the officers testified that
Lavigne did not immediately obey their command when they told him to lie down;
instead, Lavigne jogged down the hall and got to the floor slowly, making it
difficult for the officers to move past him.   Lavigne contends that he was
cooperating with the officers by putting his hands up and only jogged down the
hallway to get behind the armed officers.  But as Lavigne was slowly going
down, Boone ran from the bathroom—the site of the additional cocaine found in
the toilet—and attempted to escape out of the back door.  By acting as he did,
Lavigne obstructed the hallway and prevented the officers from reaching Boone
quickly.  Viewed in context, this evidence supports a reasonable inference that
Lavigne’s conduct displayed a consciousness of guilt by trying to give Boone an
opportunity to escape.  

Finally, the record shows that officers
found in the bathroom approximately 41 grams of partially processed crack
cocaine, still in a Pyrex measuring cup.  The police found a total of
approximately 98 grams of crack and powder cocaine in the residence.  See
Redman v. State, 848 S.W.2d 710, 714 (Tex. App.—Tyler 1992, no pet.)
(noting that “[t]he amount of cocaine or other controlled substance may be
large enough to indicate that the [a]ppellant knew of its presence” (citing Pollan
v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981))).    

These facts collectively create
sufficient logical force to support Lavigne’s conviction.  See Redman,
848 S.W.2d at 712, 714–15 (holding that evidence was sufficient to support
possession conviction where officer saw appellant in kitchen within arm’s reach
of cocaine, which was in plain view–next to all ingredients necessary to turn
powder cocaine into crack cocaine–even though appellant was not occupant of
residence, no contraband was found on him, and he was not under influence of
controlled substance); Poindexter v. State, 153 S.W.3d 402, 409–12 (Tex.
Crim. App. 2005) (holding that evidence was sufficient to support conviction
for possession after concluding that contraband found on plate in front bedroom
was in plain view and conveniently accessible to accused); Olivarez v. State,
171 S.W.3d 283, 291–92, 294 (Tex. App.—Houston [14th Dist.] 2005, no pet.)
(affirming conviction for possession where large quantity of marijuana was
scattered throughout house in plain view along with material for packaging and
weighing drugs).

Viewing all of the evidence in a
light most favorable to the verdict, a rational jury could have found beyond a
reasonable doubt that Lavigne knowingly and intentionally possessed cocaine. 
Viewing all of the evidence neutrally, we further hold that the evidence is not
so weak that the verdict is clearly wrong and manifestly unjust, nor is it
against the great weight and preponderance of the evidence.  The evidence is
therefore legally and factually sufficient to support the jury’s finding that
Lavigne was in knowing possession of cocaine.  

Conclusion

          We hold that
the evidence is legally and factually sufficient to support the verdict.  We
therefore affirm.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Taft, Jennings and Bland.

Do not publish.  Tex. R. App. P. 47.4.

 

 

 









[1] Lavigne does not contest the sufficiency of the evidence
demonstrating an intent to deliver.  





[2]
A chop block is an illegal football maneuver, an
unsportsmanlike below-the-knee block performed by an offensive player from the
side or the back of a defensive player, or while the defensive player is
engaged with another offensive player.