# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00518-CR

**Michael Anthony Berger, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-05-005, HONORABLE RONALD G. CARR, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

In a bench trial, appellant Michael Anthony Brewer was convicted of the offense of possession or transport of certain chemicals with intent to manufacture a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.124 (West Supp. 2005). In his sole issue on appeal, Brewer contests the legal and factual sufficiency of the evidence. We will affirm the judgment of the district court.

### BACKGROUND

The court heard evidence that on the afternoon of September 22, 2004, Officer Robert Woodward of the Kyle Police Department observed a pickup truck parked on the access road behind a rest area that had been permanently closed by the Texas Department of Transportation. Another officer, Kevin Lemon, testified that the department had asked peace officers to monitor the rest area

carefully because the area was experiencing problems with trespassers. Woodward testified that the truck appeared to be broken down, and he stopped to see if the occupants, a male and a female, needed assistance. Woodward also testified to his impression that, based on the circumstances, the occupants may have been engaging in sexual activity at the time he arrived. Woodward further testified that as he stopped behind the truck, Berger exited the truck and came towards Woodward's patrol car. Woodward testified that the female remained in the passenger seat. Woodward asked Berger if he needed assistance and asked Berger to produce identification. Woodward testified that Berger produced a Texas Offender Card. Berger explained that he was on parole for possession of methamphetamine. Woodward testified that Berger also stated that the truck had broken down and that they were waiting for a friend to come and help them. Woodward further testified that at this point, Berger "was starting to act nervous and fidgety." Woodward asked Berger for consent to search inside the truck. Woodward testified that Berger "said it wasn't his vehicle and he would have to check with the female, because she was the one that was supposedly borrowing the truck."

By this time, Officer Lemon had arrived at the rest area as backup for Officer Woodward. Lemon also described Berger's behavior as suspicious:

> He appeared to not really be able to stand still, he was constantly shifting his balance from one foot to the other and moving around a lot, gesturing very wildly with his hands when he talked. He appeared very dry mouthed, or something, was licking his lips a lot. As I spoke with him more, he would consequently look from me to the truck and from me to the truck numerous times.

Woodward testified that the officers obtained consent to search the truck from the female, who was identified as Jeannie Morton.[1] Lemon testified that in the center console of the

---

[1] Lemon testified that he later discovered that Berger and Morton were married.

2

truck, he found marijuana seeds and some zigzag roll papers in a Tupperware bowl. This discovery led to the arrest of Berger and Morton for possession of marijuana. The officers then proceeded to search the bed and toolbox of the truck. Woodward testified that one side of the toolbox was unlocked and the other side was locked. Woodward testified to finding miscellaneous tools, a propane camping stove, a turkey baster, and plastic tubing in the unlocked side of the toolbox. Woodward testified that he then asked Berger and Morton where the key for the locked portion of the toolbox was. Woodward testified that they stated that they did not know. Woodward then searched the front of the truck for the key and located it on the turn signal of the steering column. Woodward testified that, in the locked side of the toolbox, he found large cardboard boxes that contained cooking utensils, paper towels, plastic cups, plastic bowls, a bottle of Red Devil lye, a heat lamp, three small boxes of matchbook covers, coffee filters, plastic bags, used coffee filters that contained a red residue, two glass Mason jars wrapped in newspaper that contained a liquid residue, two packages of Sudafed liquid gel caps, a plastic bowl with a red powdery substance, glass jars containing a reddish-brown substance, and some more plastic tubing. Woodward also testified that one of the plastic bowls found in the boxes contained moist Ramen noodles. Woodward testified that Berger and Morton told him that they had eaten Ramen noodles for lunch.

Also in the toolbox, Woodward found a bottle of rubbing alcohol, charcoal lighter fluid, a bottle of propane starting fluid, a plastic gallon jug of muriatic acid, and an unmarked gallon jug of clear liquid. Woodward also testified to finding, in the bed of truck, two more glass bottles with re-sealable air tight lids, a 12-volt automotive battery, and two five gallon plastic containers of

3

distilled water. Woodward testified that many of the items found in the truck could be used to manufacture methamphetamine. The State characterized the truck as a "mobile meth lab."

Lemon testified that he asked Berger who owned the truck, and Berger stated that he had borrowed the truck from Morton's "Uncle Curtis." Lemon testified that Berger explained to him that he and Morton were homeless, and they had been living in the truck for several days. Lemon testified that he asked Berger about the contents of the toolbox and that Berger denied having any knowledge of the items in the toolbox but stated that they belonged to Uncle Curtis. On cross-examination, Lemon testified that Morton initially denied ownership of the items in the truck but then she stated that she "wanted to take responsibility for anything in the truck so Mr. Berger would not go back to prison." Lemon testified that Woodward ran a search of the truck's license plate number and that there was no record of the truck being owned by anyone named Curtis. The State introduced into evidence a copy of the legal title history of the truck indicating that Morton had purchased the truck from Hinton Motors under her married name, Jeannie Berger.

On January 5, 2005, Berger was indicted for the offense of possession of certain chemicals with intent to manufacture a controlled substance. Berger waived his right to a jury trial, and the district court found him guilty and assessed punishment at thirty years' confinement. This appeal followed.

**DISCUSSION**

In his only issue on appeal, Berger asserts that the evidence is legally and factually insufficient to sustain his conviction. Specifically, Berger contends that the State failed to prove beyond a reasonable doubt that he, and not Morton, possessed the items found in the truck.

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the evidence in the light most favorable to the finding of guilt, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the finding. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*.

In a factual sufficiency review, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). We consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). Due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, and we may disagree with the result only to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We will deem the evidence factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85; *see Johnson*, 23 S.W.3d at 11.

To convict a defendant of drug possession, the State must prove that the defendant exercised care, custody, control, or management over the drugs and that he knew he possessed a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.). When the defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Brown*, 911 S.W.2d at 747-48; *Martinets*, 884 S.W.2d at 187. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown*, 911 S.W.2d at 747. Circumstantial evidence often has equal or even greater probative value than direct evidence. *Goodman v. State*, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001). The affirmative links need not be so strong as to exclude every other reasonable alternative hypothesis except the defendant's guilt. *Brown*, 911 S.W.2d at 748.

There are many factors that courts consider in determining whether the evidence is sufficient to affirmatively link the accused with the controlled substance, including:

Whether the contraband was in plain view or recovered from an enclosed place;

The accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found;

The accused was found with a large amount of cash;

The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

The contraband was found in close proximity to the accused;

A strong residual odor of the contraband was present;

The accused possessed other contraband when arrested;

Paraphernalia to use the contraband was in view, or found on the accused;

The physical condition of the accused indicated recent consumption of the contraband in question;

Conduct by the accused indicated a consciousness of guilt;

The accused attempted to escape or flee;

The accused made furtive gestures;

The accused had a special connection to the contraband;

The occupants of the premises gave conflicting statements about relevant matters;

The accused made incriminating statements connecting himself to the contraband;

The quantity of the contraband; and,

The accused was observed in a suspicious area under suspicious circumstances.

*Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. Crim. App.—Corpus Christi 2002, no pet.) (citing *Carvajal v. State*, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 627 (Tex. App.—Fort Worth 1998, pet. ref'd); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.—Corpus Christi 1997, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 853 (Tex. App.—Tyler 1996, no pet.); *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.); *Washington v. State*, 902 S.W.2d 649, 652 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); *Watson v. State*, 861 S.W.2d 410, 414-15 (Tex. App.—Beaumont 1993, pet. ref'd)).

Seldom will any single factor have logical force sufficient to sustain a conviction. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd). Instead, the required link generally emerges from the logical force that several factors may have in combination. *Id.* In deciding whether the evidence sufficiently establishes an affirmative link between the accused and the contraband, the trier of fact—the district court in a bench trial—is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *see also State v. Taylor*, 886 S.W.2d 262, 265 (Tex. Crim. App. 1994) (court is trier of fact in bench trial). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

In this case, the following evidence suggests that Berger was not in possession of the items in the truck:

Lemon testified that Berger was not the registered owner of the truck;

Woodward and Lemon testified that Berger deferred to Morton when the officers asked for consent to search the truck;

The items in the toolbox were not in plain view;

Lemon testified that Morton claimed responsibility for the items in the truck;

Berger made no incriminating statements connecting himself to the contraband; in fact, Woodward and Lemon testified that Berger denied knowing about the contraband.

On the other hand, the following evidence suggests that Berger was in possession of the items in the truck:

Woodward and Lemon testified that Berger acted highly nervous and agitated when they questioned him, which could indicate a consciousness of guilt;[2]

Lemon testified that Berger's agitated behavior led him to believe that he may have "been on something," which suggests recent consumption of drugs;

Woodward and Lemon testified that Berger possessed other contraband, namely marijuana, when he was arrested. Woodward and Lemon testified that the marijuana was found in the center console of the truck, in plain view;

The truck was found in a suspicious location under suspicious circumstances. Woodward testified that the truck was parked in a permanently closed rest area and that Berger and Morton appeared to be having sex in the truck;

Woodward testified that Berger admitted to knowing about the presence of Ramen noodles in the toolbox, and it can thus be inferred that Berger must have also known about the other items in the toolbox;

Woodward testified that when he stopped his patrol car behind the truck, Berger exited the truck and Morton remained in the passenger seat, which suggests that Berger was the driver of the truck;

The key to the toolbox was found on the turn signal of the steering column of the truck, which suggests that the toolbox was accessible to the driver;

Woodward's testimony that Berger exited the truck and approached his patrol car suggests that Berger may have been trying to divert Woodward's attention away from the truck;

The title history of the truck shows that the truck did not belong to anyone with the name "Curtis." This fact implies that Berger was lying about the ownership of the truck;

Lemon testified that Berger stated that he and Morton were homeless and had been living in the truck for several days. If this is true, it is unlikely that Berger would be unaware of the contents of the toolbox;

---

[2] Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt. *See Leyva v. State*, 840 S.W.2d 757, 760 (Tex. App.—El Paso 1992, pet. ref'd). *But see Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984) (stating that "most citizens with nothing to hide will nevertheless manifest an understandable nervousness in the presence of the officer.").

Lemon testified that the reason Morton gave for claiming responsibility for the contraband was so that Berger "would not go back to prison," which implies that Morton was covering for Berger.

Viewing the evidence in the light most favorable to the finding of guilt, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Berger possessed the items in the truck. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We reach the same conclusion when considering all the evidence in a neutral light. Although there is certainly some evidence that the items in the truck did not belong to Berger, we do not believe the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85. The evidence is thus legally and factually sufficient to support Berger's conviction. We overrule Berger's sole issue on appeal.

## CONCLUSION

Having overruled Berger's only issue on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: June 30, 2006

Do Not Publish

10