In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-536 CR


____________________



RODRIGO VARGAS VASQUEZ, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-07-06012-CR






 MEMORANDUM OPINION 


 A jury convicted Rodrigo Vargas Vasquez for possession of a controlled substance
and money laundering. See Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003);
Act of May 26, 1993, 73rd Leg., R.S., ch. 761, 1993 Tex. Gen. Laws 2967 (amended 2005)
(current version at Tex. Pen. Code Ann . § 34.02 (Vernon Supp. 2006)). Based on the jury's
sentence, the trial court subsequently assessed punishment on the illegal possession
conviction at fifty years' confinement and a $100,000 fine. On the conviction for money
laundering, the trial court assessed Vasquez's punishment at ten years' confinement and a
$10,000 fine. Vasquez contests the legal and factual sufficiency of the evidence to support
his convictions. We overrule Vasquez's issues and affirm the judgment of the trial court. 

Factual Background

 On January 25, 2005, Vasquez, under the name "Eduardo Martinez," rented an
apartment in The Woodlands. While Vasquez acknowledged that he leased the apartment,
he testified that he did so at the request of a friend, Antonio. Although Vasquez claimed that
he rented the apartment for Antonio with funds that Antonio provided, Vasquez could give
no identifying information concerning Antonio, and he did not know Antonio's last name or
how to contact him. Vasquez disputed that he paid the monthly rent, but agreed that at
Antonio's request, he paid the initial lease fees and deposit and that he paid the late May
2005 rental payment. Employees of the apartment complex stated that they dealt with
Vasquez with respect to several issues that arose during the lease period, including an
electrical problem and problems with the garage door's remote-control.

 Acting upon information provided by other law enforcement officials, an officer from
the Montgomery County Sheriff's Department investigated Vasquez's apartment as a
possible drug "stash house" (a location where drugs are off-loaded from one vehicle, often
broken down into smaller quantities, and then loaded into another vehicle to continue
shipping the drugs across the country). After reviewing the file regarding the apartment, the
deputy sheriff discovered that when Vasquez leased the apartment, he provided the apartment
manager with a false name, a false social security number, a false driver's license number,
and a false license plate number. Vasquez maintained that Antonio provided him with the
information that Vasquez, in turn, supplied the apartment complex. 

 After obtaining a search warrant, officers entered the apartment; no one was present. 
Consistent with the information the sheriff's department received, the officers located a
secret compartment above a kitchen cabinet that contained seven bricks of cocaine. The
officers removed other drug-trafficking paraphernalia from the apartment, including an
electronic money counter, a box of latex gloves, an electronic scale, and several packages of
clear plastic wrap. The officers noted that the apartment did not contain much furniture,
clothing, food, or many household items. An officer also testified that the residents that lived
adjacent to Vasquez's apartment reported they did not see regular traffic in and out of
Vasquez's apartment. The officer explained that minimal off-hour traffic is desirable for a
residence used in drug-trafficking. 

 The officers also obtained fingerprints from various locations inside the apartment. 
Although Vasquez claimed that he had never been in the apartment and had no knowledge
of the drugs contained therein, his fingerprints and palm prints were recovered from a glass
table within the apartment. To explain the presence of his prints on the table, Vasquez
testified that he helped Antonio load the table at a furniture store. Other identifiable prints
recovered from evidence taken from the apartment did not belong to Vasquez. 

 After the search, the apartment complex manager contacted Vasquez and told him that
the apartment had been broken into, and asked whether he wanted the complex to contact the
police. Vasquez responded "no," and told the manager that he would be in the next day. At
trial, Vasquez explained that he requested that the complex not call the police in order to
allow him time to contact Antonio and find out what Antonio wanted him to do. 
Nevertheless, Vasquez and not Antonio arrived at the complex the next evening. Upon his
arrival at the complex, Vasquez was arrested by the police. He initially told the police that
his name was Eduardo, but later properly identified himself. 

 When he was arrested, the police discovered that Vasquez possessed $8,996 in cash.
Vasquez testified that he took the cash with him when he left his house because of his marital
problems. Vasquez told an officer that he did not have a job. Vasquez also testified that he
did not have a bank account.

 Vasquez stated that he had prior experience working in construction and installing
custom wheels. When working construction, Vasquez testified that he made $450 a week
and when installing custom wheels, he made $400 a week.

 A forensic chemist with the Texas Department of Public Safety tested the drugs
removed from Vasquez's apartment. She testified that the seven brick packages weighed a
total of 6.91 kilograms. The testing of the bricks revealed that they contained fifty-five
percent (55%) cocaine. Legal and Factual Sufficiency Review

 Vasquez argues that the evidence is insufficient to link him to the cocaine seized from
the apartment he rented. As a result, Vasquez asserts that the evidence is also insufficient
to show that the $8,996 cash came from criminal activity. 

 In determining issues of legal sufficiency, we ask if, after reviewing all the evidence
in the light most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense to exist beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979)); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App.
2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "The reviewing court
must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in
testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.'" Hooper, 214 S.W.3d at 13 (quoting Jackson, 443 U.S. at 318-19). Thus,
we may not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Circumstantial evidence is as probative as direct evidence in establishing the guilt of
an actor. Guevara, 152 S.W.3d at 49. Furthermore, the standard of review is the same for
both direct and circumstantial evidence cases. Id.

 In determining the evidence's factual sufficiency, we review the evidence in a neutral
light. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). "Evidence can be
factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so
weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting
evidence is outweighed by the great weight and preponderance of the contrary evidence so
as to render the verdict clearly wrong and manifestly unjust." Id. (citing Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000)). We generally afford "due deference" to the jury's determinations. Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Possession of a Controlled Substance 

 A person commits the offense of possession of a controlled substance "if the person
knowingly or intentionally possesses a controlled substance listed in Penalty Group 1[.]" 
Tex. Health & Safety Code Ann. § 481.115(a). Cocaine is a controlled substance listed
in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp.
2006). "Possession" is defined as "actual care, custody, control, or management." Tex.
Health & Safety Code Ann. § 481.002 (38) (Vernon Supp. 2006). The State may prove
that a defendant knowingly possessed contraband by offering circumstantial evidence linking
him to the contraband. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The
State need not prove exclusive possession of the contraband, since more than one person may
jointly exercise control over contraband. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex.
Crim. App. 1985). 

 When an accused is not in exclusive possession of the location where contraband is
found, additional independent facts and circumstances must link him to the contraband. See
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Nixon v. State, 928
S.W.2d 212, 215 (Tex. App.-Beaumont 1996, no pet.). Such links are established, when the
evidence, either direct or indirect, establishes that the accused's connection to the contraband
was more than just fortuitous. Poindexter, 153 S.W.3d at 405-06. 

 Some factors that may be considered to establish whether links to the contraband are
established are (1) the defendant's presence when the search was conducted, (2) whether the
contraband was in plain view, (3) the defendant's proximity to and the accessibility of the
contraband, (4) whether the defendant was under the influence of narcotics when arrested,
(5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether
the defendant made incriminating statements when arrested, (7) whether the defendant
attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an
odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11)
whether the defendant owned or had the right to possess the place where the contraband was
found, (12) whether the place where the contraband was found was enclosed, (13) whether
the defendant was found with a large amount of cash, and (14) whether the conduct of the
defendant indicated a consciousness of guilt. See Evans v. State, 202 S.W.3d 158, 162 n.12
(Tex. Crim. App. 2006). 

 Evidence establishing the links may be direct or circumstantial. See Poindexter, 153
S.W.3d at 405-06. "Circumstantial evidence" has been defined as "direct proof of a
secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." 
Taylor v. State, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984); Watson v. State, 861 S.W.2d
410, 412 (Tex. App.-Beaumont 1993, pet. ref'd). "It is the logical force of the circumstantial
evidence, not the number of links, that supports a jury's verdict." Evans, 202 S.W.3d at 166. Under the circumstances here, the jury may have concluded that Vasquez was in
exclusive possession of the apartment. He rented the apartment, and the evidence indicated
that he acted as its lessee. However, even if the jury believed that he was not in exclusive
possession of it, when we view the evidence in a light most favorable to the verdict, several
factors link Vasquez to the contraband at issue. Undisputably, Vasquez was the apartment's
lessee and had the right to possess the place where the cocaine was found. Vasquez's
fingerprints and palm prints were found on a table located inside the apartment. The cocaine
was found in the locked apartment in a secret compartment. Other pieces of drug-trafficking
paraphernalia were also found in the apartment. At the time of Vasquez's arrest, he had a
substantial amount of cash with him. Initially, Vasquez gave false information to the
arresting officer before revealing his true identity. When contacted by the apartment
complex regarding the "break-in," Vasquez instructed the complex not to contact the police. 
Vasquez could not provide identifying information about Antonio, the person that he alleged 
was the apartment's actual lessee. Based on the evidence concerning Vasquez's right to
control, and his actual exercise of control over, the apartment, we conclude that a rational
trier of fact could have found beyond a reasonable doubt that Vasquez knowingly possessed
the cocaine. See Hooper, 214 S.W.3d at 13. The totality of the evidence, direct and
circumstantial, coupled with reasonable inferences from it, point to Vasquez's knowing
possession of the cocaine in question. See Evans, 202 S.W.3d at 166. Accordingly, we hold
that the evidence is legally sufficient to support the jury's verdict that Vasquez knowingly
possessed cocaine.

 Vasquez rented the apartment and took care of issues associated with the apartment. 
Equipment useful for the sale of drugs was found inside the locked apartment with a large
quantity of cocaine. Additionally, Vasquez failed to provide information sufficient to
identify Antonio. Vasquez was unemployed at the time of his arrest, but in possession of a
significant amount of cash. Although Vasquez claimed that he was not actually the
apartment's lessee, that he never entered the apartment, and offered an explanation about
why he possessed a large sum of cash, the jury was free to believe all, some, or none of his
testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Jaggers v. State,
125 S.W.3d 661, 672 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). The jury obviously
rejected Vasquez's explanations under the circumstances here. In light of the evidence
supporting the jury's verdict, we conclude that the evidence is not so obviously weak such
that the verdict is clearly wrong and manifestly unjust, or that the proof of guilt is against the
great weight and preponderance of the evidence. See Roberts, 220 S.W.3d at 524. 
Accordingly, we hold that the evidence is factually sufficient to establish that Vasquez
knowingly possessed the cocaine.

Money Laundering 

 Money laundering occurs when a person knowingly "acquires or maintains an interest
in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity[.]" 
Act of May 26, 1993, 73rd Leg., R.S., ch. 761, 1993 Tex. Gen. Laws 2967 (amended 2005)
(current version at Tex. Pen. Code Ann. § 34.02(a)(1) (Vernon Supp. 2006)). "Criminal
activity" means any offense classified as a felony under Texas or federal law or any offense
under the laws of another state punishable by confinement for more than one year. Tex. Pen.
Code Ann. § 34.01(1) (Vernon Supp. 2006). (1) Vasquez's indictment alleged that he
"knowingly possess[ed] or acquire[d] revenue or conceal[ed] or transport[ed] the proceeds
of criminal activity, to wit: sale or acquisition or distribution or transportation of a controlled
substance, and the value of said funds was $3,000 or more but less than $20,000." Vasquez
maintains that because the evidence was insufficient to convict him of the criminal activity
of possession of a controlled substance, the evidence is insufficient to show that the cash was
the product of criminal activity. Vasquez asserts that the money came from savings that he
took with him when he left his wife. 

 We have previously rejected Vasquez's argument that he did not possess the cocaine
in question. Also, it is undisputed that at the time of Vasquez's arrest, he possessed $8,996
in cash. Further, Vasquez told an officer that he did not have a job. Except for Vasquez's
testimony that the cash constituted the proceeds from various jobs, he provided no additional
evidence tracing the cash to his earned income. Vasquez provided no records regarding his
earning history, and testified that his employers paid him in cash. Under these circumstances,
the jury was entitled to disbelieve Vasquez's testimony regarding the source of the cash
found in his possession. See Sharp, 707 S.W.2d at 614; Jaggers, 125 S.W.3d at 672. On the
other hand, the State contends that the cash came from drug-trafficking. The State's
contention is supported by the jury's determination that Vasquez possessed the 6.91
kilograms of cocaine accompanied by the seizure of equipment typically used in the sale of
drugs. 

 Although the evidence regarding the currency's origin is circumstantial, it is 
sufficient to prove Vasquez guilty of the offense alleged. Guevara, 152 S.W.3d at 49. 
Furthermore, considering the substantial evidence linking Vasquez to the apartment, the jury
could have reasonably rejected Vasquez's explanation of the source of the cash as
implausible. See Sharp, 707 S.W.2d at 614; Jaggers, 125 S.W.3d at 672. Based upon this
evidence, we conclude that a rational jury could have found that the cash came from criminal
activity. See Hooper, 214 S.W.3d at 13. Viewing the evidence neutrally, we find that the
evidence is not so obviously weak such that the jury's verdict is clearly wrong and manifestly
unjust or that the proof of guilt is against the great weight and preponderance of the evidence. 
See Roberts, 220 S.W.3d at 524. We hold that the evidence is legally and factually sufficient
to support Vasquez's money laundering conviction. Accordingly, we overrule Vasquez's 
issues and affirm the trial court's judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice


Submitted on July 24, 2007

Opinion Delivered October 3, 2007

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.
1. The definition of "criminal activity" has not substantially changed from the date of
offense; thus, we cite to its current version.