COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

KEITH
BERNARD EVANS,                                )                    No. 
08-00-00393-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                     161st District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of Ector County, Texas

                                                                              )

Appellee.                           )                         (TC# B-28,046)

 

O
P I N I O N

 

Keith
Bernard Evans was charged by indictment with possession of a controlled
substance, to-wit:  cocaine, in the
amount of four grams or more, but less than 200 grams.  A jury found him guilty and assessed
punishment at confinement in the Institutional Division of the Texas Department
of Criminal Justice for a term of thirty years, with a fine of $5,000.  We affirm.

FACTUAL SUMMARY

Appellant
was charged by indictment with possession of a controlled substance, to wit:
cocaine, in an amount, by aggregate weight, including any adulterants and dilutants, of four grams or more, but less than 200
grams.  The indictment also contained an
enhancement paragraph for a previous offense of robbery.  Appellant pled not guilty.








At
trial, Officer Chris Aguilar testified he was working surveillance with the
Street Crimes Unit of the Odessa Police Department on January 22, 2000 at a
residence on 311 East 44th Street in Ector County.  He began surveillance at 7 p.m. and sat in a
tree in the backyard of 306 East 35th Street. 
At roughly 7:10 p.m., Aguilar observed Appellant and Kissie
Green walk out of the back door. 
Appellant walked to the fence on the west side of the residence next
door, knelt down by the fence and appeared to be digging in the ground.  Officer Aguilar observed this conduct from
approximately 300 feet away.  As he dug,
Appellant looked back over his right shoulder and Kissie
handed him something which he buried. 
Appellant stood up, walked to the back door of the residence, and
appeared to converse with another individual. 
He then walked toward the alley and Kissie
followed him.  Appellant eventually
disappeared from view.  Officer Aguilar
recognized Appellant because the officer had dealt with him before.  Aguilar notified the other officers on
surveillance that he had seen Appellant bury something in the backyard.  Surveillance was set up in the front yard and
on the side of the house.

Katherine
Green, whom Officer Aguilar believed to be the owner of the home, then walked
out of the house.  She approached the
same location where Officer Aguilar had seen Appellant digging.  She appeared to retrieve something from the
ground and walked back to the house. 
Aguilar and another officer then moved to a dumpster behind the
residence to get a closer look.  Kissie Green reappeared from the alley and entered the
residence.  Two other men walked toward
the house from the alley, knocked on the back door, entered, and then
re-emerged from the house.  Believing
that his position had been compromised, Officer Aguilar proceeded to the area
where he had seen Appellant digging. 
Aguilar dug into the ground and uncovered a black film cannister.  He opened
the cannister and found a hard rock substance wrapped
in cellophane.  The substance
field-tested positive for cocaine.  








While
Officer Aguilar conducted surveillance behind the residence, Officer Toby
Julian was located about forty yards away in a field across the street.  Officer Julian noticed four or five vehicles
at the residence.  He observed each drive
up and park on either side of the street. 
One or two subjects stepped out of each vehicle and ran to the door.  A few minutes later, they ran back out of the
house and drove away.  This activity
indicated narcotics trafficking or sales. 
Officer Julian also observed a small brown pickup parked in the
direction of oncoming traffic directly in front of the residence.  The male passenger stepped out of the
vehicle, ran to the front door, and knocked. 
He was in the house for two minutes, emerged from the residence, looked
both ways, and stepped back into the pickup and drove away.  Officer Julian observed Appellant four or
five times during the surveillance and recognized him because of past
encounters.

Officer
Ricky George was involved in the surveillance of the residence as a part of a
perimeter unit.  He was contacted by
Officer Aguilar who requested that he detain Appellant who was seen leaving the
residence.  Officer George found
Appellant about a block away.  Appellant
accompanied Officer George back to the house where he was arrested by Officer
Aguilar.  Officer George searched
Appellant and found approximately $1,800 on his person which was largely in
denominations of twenty dollar bills. 
According to Officer George, this was significant because crack cocaine
is usually sold in twenty dollar increments. 
Officer Aguilar testified that his observation of a vehicle pulling up
to the front of the house and Katherine Green walking out of the back door to
retrieve something from the yard was one of the reasons he arrested
Appellant.  The coming and going of
pedestrians and vehicular traffic was another factor.  Aguilar also explained that in his experience
as a police officer, people will bury drugs in their backyards.













Dennis
Hambrick, a chemist with the Texas Department of
Public Safety in Midland, analyzed the substance and found that it tested
positive for cocaine and weighed 13.3 grams. 
Officer Aguilar also looked for shoe prints at the scene.  Appellant=s
shoes were removed and compared to shoe prints in the area where Officer
Aguilar found the cannister.  The prints and the shoes matched.          After
the State rested, Appellant moved for an instructed verdict which the trial
court overruled.  During the punishment
phase, and as the trial court addressed the jury, Appellant initiated a
disturbance with law enforcement personnel in the courtroom.  Appellant made verbal outbursts, struck one
of the courtroom officers, and put up a struggle before he was subdued and
handcuffed.[1]
The jury witnessed the disturbance but was immediately instructed by the trial
judge to go into the jury room.  When
court resumed the next morning, defense counsel moved for mistrial based on the
prior day=s
disturbance, requested that Appellant be given a psychiatric examination prior
to sentencing, and asked for a continuance to allow Appellant to replace his
trial counsel.  The trial court overruled
each of the motions.  Following
deliberation, the jury found the allegation of a prior conviction as alleged in
the indictment to be true and assessed Appellant=s
punishment at thirty years in the Institutional Division of the Texas
Department of Criminal Justice, with a fine of $5,000.  For the egregious conduct in the courtroom
during the punishment phase, the trial court assessed an additional punishment
of six months in the Ector County Jail to be served consecutively to the jury=s punishment.  Appellant timely filed a notice of appeal.

LEGAL SUFFICIENCY








In Point of Error No. One, Appellant contends the trial
court erred by failing to grant his motion for instructed verdict.  While he frames the complaint in terms of
factual sufficiency,  a
challenge to the denial of a motion for instructed verdict is actually a
challenge to the  legal sufficiency of
the evidence.  Madden v. State,
799 S.W.2d 683, 686 (Tex.Crim.App. 1990), cert.
denied, 498 U.S. 1301, 111 S.Ct. 902, 112 L.Ed.2d
1026 (1991).  Accordingly, we analyze his
claim as a legal sufficiency complaint. 
We view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d
560, 573 (1979); Turner v. State, 805 S.W.2d 423, 427 (Tex.Crim.App. 1991), cert. denied, 502 U.S. 870, 112
S.Ct. 202, 116 L.Ed.2d 162 (1991); Hernandez v.
State, 946 S.W.2d 108, 110-11 (Tex.App.--El Paso
1997, no pet.).  We use the same standard
in reviewing the sufficiency of both direct and circumstantial evidence
cases.  Geesa v. State, 820
S.W.2d 154, 159-61 (Tex.Crim.App. 1991).  We do not resolve conflicts of fact or assign
credibility to witnesses, as it is the function of the trier
of fact to accept or reject any, part, or all of any witness=s testimony.  See Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App.
1992); Lucero v. State, 915 S.W.2d 612, 614 (Tex.App.--El Paso
1996, pet. ref=d).  We determine only if the explicit and
implicit findings of the trier of fact are rational
by viewing all the evidence in a light most favorable to the verdict.  See Lucero, 915 S.W.2d
at 614.








Appellant
maintains that the State failed to prove he possessed the cocaine because
Officer Aguilar never saw him with physical possession of the black cannister.  To
support a conviction for unlawful possession, the State must prove that the
accused (1) exercised care, control, and management over the contraband, and
(2) knew the matter possessed was contraband. 
See Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988); Davila v. State, 930 S.W.2d
641, 644-45 (Tex.App.--El Paso 1996, pet. ref=d).  Mere presence at the scene is not sufficient
to establish unlawful possession of a controlled substance, but evidence which
affirmatively links the defendant to the controlled substance will suffice to
prove that he possessed it knowingly.  McGoldrick v. State, 682 S.W.2d 573, 578-79 (Tex.Crim.App.
1985).  The affirmative link must
raise a reasonable inference that the accused knew of and controlled the
contraband, Christian v. State, 686 S.W.2d 930, 932 (Tex.Crim.App.
1985); Levario v. State, 964 S.W.2d
290, 294 (Tex.App.--El Paso 1997, no pet.), and may
be shown by either direct or circumstantial evidence establishing Ato the requisite level of confidence,
that the accused=s
connection with the drug was more than just fortuitous.@  Brown v. State, 911
S.W.2d 744,747 (Tex.Crim.App. 1995).  Factors that may provide an affirmative link
include, among others, (1) the contraband was conveniently accessible to the
accused,[2]
and (2) the accused had cash and weapons. 
King v. State, 710 S.W.2d 110, 113 (Tex.App.--Houston
[14th Dist.] 1986, pet. ref=d),
cert. denied, 484 U.S. 829, 108 S.Ct. 99, 98
L.Ed.2d 59 (1987).  One factor alone does
not support a finding of an affirmative link. 
Herndon v. State, 787 S.W.2d 408, 409 (Tex.Crim.App. 1990). 
The number of factors present is less important than the logical force
the factors have alone or in combination in establishing the elements of the
offense.  Whitworth
v. State, 808 S.W.2d 566, 569 (Tex.App.--Austin
1991, pet. ref=d).








Reviewing
the evidence in a light most favorable to the verdict, we conclude a rational
jury could find the essential elements of possession of a controlled substance
beyond a reasonable doubt. Appellant urges us to disregard the jury=s inference that he was in possession
of the cocaine because at least one other person--Katherine Green--could have
buried the cocaine.  While Officer
Aguilar did not see what object Kissie Green handed
to Appellant, the jury could well have inferred that the object was the black cannister and that the cannister
contained cocaine.  Officer Aguilar dug
up the cannister following his surveillance and
Appellant was apprehended with a large amount of cash in denominations of
twenty dollar bills.  These facts support
an inference that Appellant knew of and controlled the cocaine.  Officer Julian observed pedestrian and
vehicular traffic at the residence--activity commonly associated with drug
trafficking.  Moreover, in Officer
Aguilar=s
experience, people will often bury drugs. 
The logical force of all of this evidence, taken together, supports the
elements of possession.  Appellant=s arguments that Katherine Green could
have placed the cannister in the ground or added
cocaine to the cannister are simply additional  competing
theories of the case that the jury was entitled to reject.  As an appellate court, our role is to
determine whether the jury was rational in finding the elements of the offense
under the theory most favorable to the verdict. 
Accordingly, we overrule Point of Error No. One.

COMPETENCY

In
his second point of error, Appellant claims the trial court erred by failing to
conduct a preliminary inquiry as to whether he was competent to stand trial.  See Tex.Code Crim.Proc.Ann. art.
46.02, ' 2(b)(Vernon 1979). 
Section 2(b) of Article 46.02 provides that if during the trial evidence
of the defendant=s incompetency is brought to the attention of the court, the
court must conduct a hearing out of the presence of the jury to determine
whether there is evidence to support a finding of incompetency
to stand trial.  See Tex.Code Crim.Proc.Ann. art. 46.02, '
2(b).  Such an inquiry is required
only if the evidence is such as to raise a Abona
fide@ doubt in
the trial court=s mind as
to the defendant=s
competency.  Collier v. State, 959
S.W.2d 621, 625 (Tex.Crim.App. 1997), cert. denied,
525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276
(1998).  In general, a Abona fide@
doubt is raised only if the evidence indicates recent severe mental illness, at
least moderate mental retardation, or truly bizarre acts by the defendant.  Id., citing Mata
v. State, 632 S.W.2d 355, 359 (Tex.Crim.App.
1982).  We review the trial court=s ruling for abuse of discretion.  Garcia v. State, 595 S.W.2d 538, 542 (Tex.Crim.App. 1980), appeal reinstated, 601 S.W.2d
369 (Tex.Crim.App. 1980).








Defense
counsel argued that based on Appellant=s
behavior during the disturbance, the trial court should conduct a psychiatric
examination to determine his competency to stand trial.  We find there was no evidence presented to
the trial court to raise a bona fide doubt as to Appellant=s competency.  While Appellant=s
disruptive behavior revealed his contempt for the court and defense counsel, it
is no indication of his incompetency to stand
trial.  We find no abuse of
discretion.  Point of
Error No. Two is overruled and the judgment is affirmed.

 

 

August 15, 2002

                                                                         


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]  The record
reveals the following occurred during the Appellant=s disturbance in the courtroom:

 

THE COURT:        All right.  You will have to get this gentleman quiet
now.  Don=t take him out yet.  I
will need him here until -- sir, have a seat there and be quiet.  Mr. Evans.

 

DEFENDANT:      I am not in the mood to be sitting in a
courtroom.

 

THE COURT:        Mr. Evans, be quiet.

 

DEFENDANT:      I am not in the mood to be sitting in the
courtroom, I told you.  I gave this man
$3,500.00 and he sold me out.  Fuck
that.  I don=t want to sit in the courtroom.  I don=t want
to sit in here.  I don=t want to sit in here.

 

THE COURT:        Ladies and gentlemen of the jury --

 

DEFENDANT:      You fucked me up.  Fuck that.

 

THE COURT:        -- tomorrow morning at 9:00 -- 

 

DEFENDANT:      I don=t want
to sit in here.  I don=t want to sit in here.

 

BUILDING SECURITY: 
Well, you don=t have a choice right now.

 

DEFENDANT:      Oh, fuck you.

 

REPORTER=S
NOTE:  (At this point, a fight in the
courtroom ensued between the Defendant and law              enforcement
personnel[.])

 

THE COURT:        Ladies and gentlemen, please go into the
juryroom.  (The
jury was retired from the Courtroom before the fight was over[.])

 

THE COURT:        We
will need to get him back seated in the chair. 
Mr. McLeaish, if you will come forward so we
can -- we just need to --We just had a fight. 
We need to get back on the record. 
The Defendant has made a disturbance in the court and has struck one of
the officers and then there was a struggle at which the Defendant was
subdued.  As soon as I could, I did order
that the jury go into the jury room.





[2]  See Guiton v. State, 679 S.W.2d 66, 69 (Tex.App.--Dallas
1984), aff=d, 742 S.W.2d 5, 8 (Tex.Crim.App.
1987).