ACCEPTED
01-14-00877-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/8/2015 4:00:38 PM
CHRISTOPHER PRINE
CLERK

**Appeal No. 01-14-00877-CR**

_____

**In the First Court of Appeals**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/8/2015 4:00:38 PM
CHRISTOPHER A. PRINE
Clerk

_____

**FALLON NICOLE WAGNER, Appellant**


**Vs.**


**THE STATE OF TEXAS, Appellee.**

_____

**On Appeal from the 149th Judicial District Court
of Brazoria County,
Cause No. 73035.**

_____

**MOTION FOR REHEARING
FOR APPELLANT, FALLON NICOLE WAGNER**

_____

To the Honorable Justices of the First Court of Appeals:

Comes now appellant, Fallon Nicole Wagner, by and through her attorney of record, Cary M. Faden, and files this his Motion For Rehearing of the September 29, 2015, decision of the First Court Of Appeals of Texas in *Wagner v. State*, No. 01-14-00877-CR, slip op. at 1-11, (Tex. App. - Houston (1st Dist.), September 29, 2015, pet. pending), and would respectfully show the Court the following:

1

## I.

On April 17, 2014, Appellant, was indicted for the state jail degree felony offense of Possession Of A Controlled Substance-Enhanced; (1 CR at 5). The offense was alleged to have occurred on or about February 26, 2014. (1 CR at 5). On October 20, 2014, Appellant pleaded not guilty to the indictment. (3 RR at 4). After a jury trial, the jury assessed Appellant's punishment at confinement in the Texas Department of Criminal Justice-Institutional Division for a period of eight years Texas Department of Criminal Justice-Institutional Division, with a $1,000.00 fine. (2 CR at 4). On October 28, 2014, Appellant timely filed her notice of appeal. (1 CR at 60).

In the Brief For Appellant, one point of error was briefed. Appellant files this his Motion For Rehearing wherein, Appellant is concerned as to given the Court failed to hear Oral Argument in this appeal, wherein it appears clear that this Court failed to properly apply the law as it related to Appellant's issue and again argues the evidence was not legally sufficient to prove that Appellant was guilty of the offense of possession of a controlled substance. It is Appellant's contention that given the tenor of the Opinion, this Court has wholly failed to reach all of the merits of Appellant's argument and misconstrued Appellant's argument as to the Brief For Appellant, and how said application will affect Appellant's case.

II.

In its opinion this Court responded to Appellant's points of error and held:

To prove unlawful possession of a controlled substance, the State must prove that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE § 481.002(38). In this case the State was required to prove that Wagner exercised control, management, or care over the methamphetamine and that she knew that the substance in the silver gift box was methamphetamine. However, the State was entitled to rely upon circumstantial evidence because circumstantial evidence "is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales,* 414 S.W.3d at 742 (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Poindexter,* 153 S.W.3d at 405-06. Presence or proximity, when combined with other evidence, either direct or circumstantial, may be sufficient to establish the element of possession beyond a reasonable doubt. *Evans v. State,* 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

The Court of Criminal Appeals has recognized numerous "affirmative links" as non-exclusive factors that may establish possession, including whether: (1) the defendant was present when a search was conducted; (2) the contraband was in plain view; (3) the contraband was in proximity to and accessible by the defendant; (4) the defendant was under the influence of narcotics when arrested; (5) the defendant possessed other contraband when arrested; (6) the defendant made incriminating statements when arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of contraband; (10) other contraband or drug paraphernalia was present; (11) the defendant owned or had the right to possess the place where the contraband was found; (12) the place where the contraband was found was enclosed; (13) the defendant was found with a large amount of cash; and (14) the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12.

These factors do not comprise "an independent test of legal sufficiency." *Id.* at 161-62 n.9. Rather, the key legal question is whether the circumstances, in conjunction with a defendant's presence, justify a conclusion that the defendant knowingly possessed the contraband. *Id.* "It is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Id.* at 166.

When looking at the evidence in the light most favorable to the verdict, the State presented evidence for six of the nonexclusive factors identified by the Court

4

of Criminal Appeals. However, it is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. Based on the logical force of the evidence presented, we find that a rational jury could have found Wagner guilty beyond a reasonable doubt.

*Factors 1 and 3: Wagner's presence when the search was conducted, and Wagner's proximity to and the accessibility of the contraband.* Officer Edwards testified that when he arrived, Wagner was sitting in the driver's seat of the Ford Focus, and she was the sole occupant. He also testified that he found the silver gift box containing the methamphetamine on the passenger seat next to Wagner. The jury was free to rely on the testimony of Officer Edwards as to the location of the box containing the methamphetamine. The jury was also free to consider the testimony that the box was sitting on the passenger seat and that Wagner was in the driver seat and sole occupant of the vehicle as evidence that she was in close proximity to the contraband and that it was accessible to her.

*Factor 4: Whether Wagner was under the influence of narcotics when arrested.* Officer Edwards testified that Wagner's inability to perform field sobriety tests, the odor of alcohol, and her behavior during the ride to the police station led him to believe that she was under the influence of both alcohol and methamphetamine. He testified that Wagner would nod her head and then pick it back up quickly as if she

had a burst of energy, which he said was consistent with the effects of a combination of alcohol and a stimulant such as methamphetamine. The jury was entitled to rely on this testimony to determine that Wagner was under the influence of methamphetamine at the time she was arrested.

*Factor 6: Whether Wagner made incriminating statements when arrested.* Officer Edwards testified that after the arrest Wagner told him the crystalline substance was crystal meth. The jury, as factfinder, was entitled to determine Officer Edwards's credibility and to consider his testimony as evidence that Wagner knew that the substance was methamphetamine and as a link between her and control of the substance.

*Factor 10: Whether other contraband or drug paraphernalia was present.* Officer Edwards testified that a purple brandy bag containing pills and two pipes that could be used for smoking methamphetamine were found in the backseat. Additional drug paraphernalia were found in the backseat of the car. The jury was entitled to consider the presence of the additional contraband and drug paraphernalia in the car as a link between Wagner and the methamphetamine.

*Factor 12: Whether the place where the contraband was found was enclosed.* When the officer approached, the car's doors and windows were closed. He had to knock on the window in order to speak with Wagner. The jury was entitled to

6

consider this testimony with the testimony that she was the only person in the car in order to infer that Wagner possessed the methamphetamine. Wagner contends that several affirmative links are not supported by the evidence. She is correct that some of the factors that have been used to establish possession are absent in this case. For example, she was not found with a large amount of cash. *See Evans,* 202 S.W.3d at 162 n.12. However, the "absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State,* 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref d). Wagner contends that there was no evidence showing she was the owner of the car in which the methamphetamine was found. Yet the State is not required to prove that Wagner owned the car in order to show that she exercised control, management, or care over the methamphetamine and knew what it was. *See, e.g., Blackman v. State,* 350 S.W.3d 588, 589 (Tex. Crim. App. 2011) (upholding the conviction for possession of a controlled substance of a passenger in a car that contained cocaine). The jury was free to determine that she possessed the methamphetamine despite the fact the car was rented. Wagner also argues that there was no evidence that she had access to the controlled substance. In *Cole v. State,* 194 S.W.3d 538 (Tex. App.—Houston [1st Dist.] 2006, pet. ref d), evidence showing that the substance was located near the defendant's possessions in the enclosed trunk of a car being driven

7

solely by the defendant, when combined with evidence supporting other links, was sufficient for a jury to convict the defendant for possession of a controlled substance. *See Cole* 194 S.W.3d at 549. The evidence of Wagner's access was much stronger than that found to be sufficient in *Cole.* Additionally, Wagner's personal belongings, such as her shoes and purse, were scattered next to and among the drugs and paraphernalia. The jury could rationally conclude that Wagner had access to and possessed the methamphetamine based on this evidence. Finally, Wagner argues that there was no evidence that she was the only one to have control over the car. However, Officer Edwards testified that Wagner was the sole occupant and driver of the car. The jury was entitled to consider this issue and weigh the evidence in light of the fact that Officer Edward's testimony was not contested at trial.

### III.

Appellant contends by her issue that the trial court failed to properly apply the law as it related to Appellant's issue and again argues the evidence was not legally sufficient to prove that Appellant was guilty of the offense of possession of a controlled substance.

Appellant argues that the evidence is insufficient to prove that she had care, custody, or control over the contraband or that he had knowledge of its presence. She points out that mere presence, by itself, at the scene of the search or in the said

automobile is not enough to support a conviction for possession of a controlled substance. *Herndon v. State,* 787 S.W.2d 408 (Tex. Crim. App. 1990). Further, Appellant argues that other people had access to the automobile where the controlled substance was found, and that the only evidence linking her to the contraband is the container or silver gift box found in the automobile where the controlled substance was found.

In *McQueen v. State,* 781 S.W.2d 600 (Tex. Crim. App. 1989), the Court Of Criminal Appeals stated that analysis of criminal conduct varies according to the "conduct elements" of the offense. Specifically, the Texas Penal Code, Sec. 6.03 delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. Any offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply.

Appellant's contentions indicate that the evidence does not show several affirmative links between her and the substance. First, she was in the automobile and at the place searched at the time of the search. There was no evidence admitted showing Appellant was the owner of the automobile in which the controlled

9

substance was found nor proven by the State. The controlled substance was allegedly found at or near Appellant's person, never proven by the State. Appellant argues the State's argument hinges on the allegation that Appellant had the controlled substance at or near his person at the time of the search. There was no evidence presented that Appellant had access to the controlled substance and sole control over the automobile as its operator but not owner. Thus, this Court can not find adequate affirmative links between Appellant and the controlled substance, and thus the evidence is legally insufficient to support her conviction.

At trial Eric C. Edwards, working for Manvel Police Department, as a night-shift patrol officer testified, on February 26, 2014, around the time of 1:42 a.m., his attention gravitated towards a vehicle with hazard lights on in a moving lane of traffic, the inside lane. He was traveling southbound. It was a silver Ford Focus. It was in the inside lane closest to the median. He stopped and then initiated his emergency back lights and directional lights. When he does not turn on the full range of lights, his camera does not activate. The camera was not activated. He made entry to the front, the front driver's side of the vehicle. It was more of a welfare concern. He approached the vehicle and made contact with the defendant. He noticed her head was slumped over as if she may have been asleep. So he gently knocked on the window to get her attention; and once she rolled the window down, he could smell

a odor of alcohol emanate outside of the vehicle. She responded she was coming from Houston. She just said she was at a club in Houston with a friend. She planned on going to Katy, Texas. Katy, Texas, is nowhere close to Katy, 288 southbound. He claimed she was possibly an intoxicated or inebriated person. This time he asked the defendant how much have she had to drink. She advised that she had two drinks. Her movement was somewhat exaggerated. She tried to get to her purse. She didn't seem to know where anything was at. She also seemed to be a little bit confused and disoriented about what was going on. He noticed glossy and bloodshot eyes. He noticed every time she talked her speech was very slurred. He asked her could she step out of the motor vehicle. She just couldn't find her shoes and she eventually found one shoe in the front of the vehicle; and as she exited, she found a second one, he found a second one as she was searching behind the driver's seat. He did field sobriety tasks, called them standardized field sobriety tests, which consist of three different tests. One test is called a Horizontal Gaze Nystagmus, where we check eyes for any impairment of intoxication. Another test that determines your physical and mental capacities. It's called a Walk-and-Turn, where we give you instructions and we ask you to follow those instructions and then you walk. The second test is called a One-Leg Stand, where we're asking, we're asking the person to stand on one leg, the leg that's, they are most comfortable with and we ask them to count until we tell them

11

to stop counting. She did not perform the tasks well in his opinion, he felt she was a poly drug user, a combination of alcohol and maybe another substance that he couldn't determine. He claimed he could smell alcohol coming off of her body. After he claimed her failure of the sobriety tests, he asked the defendant to put her hands behind her back, handcuffed her and advised her she was going to be arrested for driving while intoxicated. Upon inventorying the vehicle, he searched the front. He went through the back and kind of came at a angle and saw this silver gift box. And opened the gift box to see if there's anything that's of monetary value and discovered some very small crystal-like substance that was in there, rock-like substance, which eventually was tested to be methamphetamines from a test kit. It was in a transparent, small baggie. There was a purple E&J package. E&J comes with a purple bag; and inside that bag, he located some contraband. One looked like a smoking pipe and the other thing was, it had some pills in it. Because we found what we thought at the time could be drugs, when we found the crystal substance. Inside the purse, there was found some pills. Quetiapine, which is a antipsychotic drug. Found near the front seat, passenger floorboard was a bottle filled with E&J brandy. (4 RR at 161-190).

**VOIR DIRE EXAMINATION** BY MR. PACKARD: the witness testified that he bagged these as evidence, and when we say "bagged," that means you put them in bags. Once they were bagged and labeled, when they were labeled and bagged, he

12

placed them into the Manvel vault. MR. PACKARD: All right. Your Honor, I'm going to object on the grounds, one, of relevancy; two, that Officer Edwards doesn't have the personal knowledge required to have these admitted into evidence. In other words, the proper predicate hasn't been laid. MR. HRACH: He testified, Your Honor, that those were the same items that he took into custody that are here today, marked, bagged by that department; and we have established the beginning and end of the chain of custody to the courtroom. THE COURT: Okay. I'm going to sustain the objection for now until you put on some more chain of custody. THE COURT: So for purposes of where we are right now in the testimony, I'll sustain that objection. (4 RR at 190-196).

Direct examination continued, at the Manvel Jail, already having testing the subject, it was positive for crystal meth. He decided to at least go inside of the jail cell and ask the subject what was the contents in the little plastic baggie, and she had told him it was crystal meth. (4 RR at 203-210).

Cross examination, he testified that when he first stopped Ms. Wagner it was in an active traffic lane in the highway but it wasn't videoing in his patrol car. The vehicle as maybe a vehicle that was stalled or stranded. So for safety purposes he activated his directional, yellow lights on the vehicle. When he activated those, it did not activate the camera; and it also activated my back lights on the back of my

13

vehicle. Only when he activate it's a toggle switch, activate it on fully then the lights and the camera activates. (44 RR at 210-229). Cross examination continued, the vehicle Appellant was found was not registered to Fallon Wagner. (5 RR at 6-21).

Again, the Texas Court of Criminal Appeals determined that the *Jackson v. Virginia* standard is the only standard a reviewing court should apply to determine whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). Accordingly, under current Texas law, in reviewing Appellant's issues the Court will apply the *Jackson v. Virginia* standard and do not separately refer to legal or factual sufficiency.

All of the evidence is viewed in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt, *Brooks,* 323 S.W.3d at 902. The Court will defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *Brooks,* 323 S.W.3d at 907. Under the review of the evidence required by *Brooks,* even in the light most favorable to the verdict, a rational jury could not conclude that this evidence is such as to permit it to find beyond a reasonable doubt that Appellant did then and there intentionally or knowingly possess a controlled substance listed in Penalty Group One (1), namely, methamphetamine, and the amount of said controlled

14

substance was, by aggregate weight, including any adulterants and dilutants, less than one (1) gram. The conviction should be reversed and this Court should render a judgment of acquittal. This Court should grant a Rehearing.

## IV.

Appellant files this his Motion For Rehearing due to the fact that this Court, after having rejected the idea of Oral Argument has wholly rejected all of Appellant's arguments, and refused to address all of the merits of Appellant's appeal; and has misconstrued Appellant's argument that could effect the analysis of this Court's Opinion. Appellant argued in the instant case, and appealed her conviction.

Appellant is in dispute with this Court's opinion issued and requests that this Court consider this Motion For Rehearing. Appellant's contention is that the arguments in this Court's Opinion are an inaccurate interpretation and arguably unclear interpretation of Appellant's arguments that should merit a Rehearing.

## V.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant, Fallon Nicole Wagner, prays that this Court grant his motion for rehearing and set it for submission at the earliest possible date; that upon submission and review of the appellate record and the briefs and argument of counsel, the Court find reversible error in the

judgment of the trial court and issue its opinion and judgment reversing the judgment of the trial court; and remand the matter to the trial court for a new trial, assessing all costs of the appeal against appellee, and order execution of the judgment of this Court in accordance with its opinion.

Respectfully submitted,

**/s/CARY M. FADEN**
**Cary M. Faden**
SBN 06768725
77 Sugar Creek Center Blvd., Suite 230
Sugar Land, Texas 77478
Telephone:(281) 491-6182
Facsimile:(281) 491-0049
**E-Mail: caryfaden@aol.com**

Attorney For Appellant

## CERTIFICATE OF COMPLIANCE, T.R.A.P., RULE 9.4(3)

In accordance with TEX. R. APP. P. 9.4(3), I Cary M. Faden, certify that this is a computer generated document and I state that the number of words in this document is approximately 3,800 words. I am relying on the word count of the computer program used to prepare this document.

**/s/CARY M. FADEN**
**Cary M. Faden**

16

## **CERTIFICATE OF SERVICE**

In accordance with TEX. R. APP. P. 9.5, I, Cary M. Faden, certify that a true and correct copy of the foregoing motion for rehearing has been served, by hand delivery, and/or by U.S. Mail, and/or by facsimile transmittal, to Fallon Nicole Wagner; to the attorney for the State Of Texas, Jeri Yenne, District Attorney, 111 E. Locust Street, Room 408A, Angleton, Texas 77515 on this 9th day of October, 2015.

**/s/CARY M. FADEN**
**Cary M. Faden**