

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00465-CR
No. 07-16-00466-CR
No. 07-16-00467-CR
No. 07-16-00468-CR

ALEXANDER ELI MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2900, Honorable Gordon Houston Green, Presiding

June 19, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant, Alexander Eli Martinez, was convicted by a jury of four offenses: Count I – possession of cocaine with intent to deliver;[1] Count II – possession of methamphetamine with intent to deliver;[2] Count III – possession of marijuana;[3] and Count

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2015).

[2] *Id.*

[3] *Id.* § 481.121(a), (b)(3) (West 2017).

IV – possession of methamphetamine.[4]  The jury assessed his punishment for Counts I, II and IV at five years in prison, with the sentences suspended for five years.  As to Count III, the jury assessed appellant's punishment at two years in state jail.  Appellant challenges the sufficiency of the evidence to prove that he possessed cocaine or methamphetamine with the intent to deliver, as set forth in Counts I and II of his indictment.  We affirm.

## Background

In September of 2014, law enforcement began an investigation into the distribution of narcotics from appellant's residence at 301 East Chicago in Muleshoe, Texas.  On December 4, 2014, while the home was under surveillance, a confidential informant purchased cocaine from appellant.  Later that same day, law enforcement obtained a search warrant for the residence.

When law enforcement arrived at the residence to serve the warrant, a Dodge Nitro automobile was in the driveway with the reverse lights on as if the driver was preparing to back out.  The driver was later identified as Cristal Quintanilla.  Her friend, Selena was the front seat passenger.  Four people occupied the back seat: Pee Wee was seated directly behind Quintanilla, B.J. was seated in the center of the back seat, and Shayla was seated directly behind the front passenger seat.  Appellant was sitting on B.J.'s lap in the middle of the back seat behind the center console.  Officer Andrade made eye contact with appellant and saw him "reaching down."  Officer Parks asked everyone to get out of the vehicle and line up along a fence.  As appellant got out of the vehicle, he

---

[4]  *Id.* § 481.115(a), (c) (West 2017).

"took off running." Officer Parks chased him and eventually stopped him after unsuccessfully firing his taser.

Upon being returned to the scene, appellant and his residence were searched. His wallet contained $1,215. One of the $100 bills found in his wallet had the same serial number as a $100 bill that law enforcement had given to a confidential informant to purchase cocaine from appellant. In the master bedroom, a handgun was found in a dresser drawer and a rifle was found hidden in a hole in the closet wall. Seven glass pipes, a clear plastic baggie of methamphetamine, and two "bricks" of marijuana were also found in the dresser. Appellant admitted that "everything in the house was his."

Officers searched the vehicle in the driveway and found a plastic bag that contained several plastic baggies in the pocket on the back of the driver's seat. The contents of some of the baggies were field tested and found to be positive for cocaine. A purse containing drug residue was found in the front seat. A shell-shaped compact and a rolled dollar bill were also found. Appellant denied that the drugs found in the vehicle belonged to him. He also denied selling or possessing cocaine.

A few hours after the search, Quintanilla went to the sheriff's office and spoke to Chief Deputy Dominguez. She showed him a Snapchat video[5] on her cell phone that was posted by appellant on December 4, 2014. Dominguez made a recording of the Snapchat video and it was played for the jury. Quintanilla identified appellant as being the person

---

[5] Snapchat is a mobile-focused messaging app that allows users to share "stories" of 24-hour chronological content. Pictures, video, and messages are only available for a short time before they become inaccessible. "Snaps" can be directed privately to selected contacts or to a semi-public "story." *See* Snapchat, Wikipedia, https://en.wikipedia.org/wiki/Snapchat (last visited June 15, 2018).

who appeared in the video. In the video, appellant says "Does the bitch want some pure cocaine or not," repeats the statement again, and talks about counting some money.

The baggies found in the seat pocket were sent to the Texas Department of Public Safety for testing. The results of testing showed the following: one baggie contained 18.09 grams of cocaine, one baggie contained 3.5 grams of cocaine, one baggie contained 48.73 grams of methamphetamine, one baggie contained 1.75 grams of methamphetamine, and two baggies were found to contain no controlled substances. Chief Geske testified that these quantities of methamphetamine and cocaine would indicate that someone was selling those drugs.

At trial, Quintanilla testified that she borrowed the Dodge Nitro from Dakota Pitcock. The evening of December 4, Quintanilla and Selena went to appellant's residence and picked up Shayla and Pee Wee. As they were driving away, Quintanilla saw the police headed in the direction of appellant's house so she turned around and returned to appellant's house to tell them they had seen "the cops." B.J. and appellant got in the vehicle right before law enforcement arrived. Quintanilla admitted that the purse, compact, and rolled dollar bill found in the vehicle belonged to her. She did not see appellant put any drugs in the vehicle. She acknowledged that all the people in the vehicle that night were drug users. She also told the jury that Pitcock, the owner of the vehicle, was a drug user.

The jury found appellant guilty on all four counts. Appellant challenges the sufficiency of the evidence to support his convictions of possession with intent to deliver cocaine and methamphetamine.

4

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906-07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448-50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Applicable Law

To support the challenged verdicts, the State was required to prove that appellant knowingly possessed with intent to deliver cocaine and methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). To prove possession, the State was required to show that appellant (1) exercised "actual care, custody, control, or management" of the

5

substance, and (2) knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005); *see* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2017).

When the accused does not have exclusive possession of the controlled substance or the locale where the controlled substance was found, it cannot be concluded or presumed that the accused had possession over the contraband unless there are additional independent facts or circumstances that tend to connect or link the accused to the knowing possession of the contraband. *Poindexter*, 153 S.W.3d at 406; *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006). Mere presence of a defendant at the scene of an offense does not make one a party to joint possession. *Herndon v. State*, 787 S.W.2d 408, 410 (Tex. Crim. App. 1990) (citing *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex. Crim. App. 1981)). While some links, including presence, may show knowledge of illegal activities, presence alone does not furnish the connection necessary to establish that a defendant knowingly possessed the contraband. *Herndon,* 787 S.W.2d at 410. Regardless of whether the evidence is direct or circumstantial, in addition to mere presence, the State's case must establish some link between the defendant and the controlled substance which is more than fortuitous. *Evans,* 202 S.W.3d at 161-62. The "links rule" is designed to protect the innocent bystander—a relative, friend, spouse, roommate, or even a stranger to the actual possessor—from conviction based solely upon his fortuitous proximity to someone else's illegal activities. *Id.*

There are numerous nonexclusive factors that have been recognized as contributing to an evaluation of whether an accused "possesses" or is linked to the contraband. See *Triplett v. State*, 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet.

ref'd).[6]  Those links include, but are not limited to:  (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made any furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.  *Evans*, 202 S.W.3d. at 162 n.12; *see Triplett*, 292 S.W.3d at 208-09; *Figueroa v. State*, 250 S.W.3d 490, 500-01 (Tex. App.—Austin 2008, pet. ref'd) (citing *Brown v. State*, 911 S.W.2d 744, 745 (Tex. Crim. App. 1995)).

These factors, however, are simply that—factors which may or may not circumstantially establish the sufficiency of evidence offered to prove the knowing "possession" of a controlled substance.  *Evans*, 202 S.W.3d at 162 n.12 (These factors "are not a litmus test.").  Furthermore, there is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of drugs.  *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).  Each

---

[6] The Court of Criminal Appeals has recognized that the term "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to evaluate evidence of possession.  *Evans,* 202 S.W.3d at 161 n.9.  A link is a fact or circumstance which generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it.  *Lair v. State*, 265 S.W.3d 580, 600 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).  The evidence demonstrating such links may be direct or circumstantial.  *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

case must be examined according to its own facts on a case-by-case basis. *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans*, 202 S.W.3d at 162, 166.

Analysis

Appellant asserts that the evidence is insufficient to support his conviction in Counts I and II of the indictment, contending the evidence was insufficient to prove that he possessed the cocaine and methamphetamine found in the vehicle. Specifically, appellant argues that the State failed to prove beyond a reasonable doubt that the cocaine and methamphetamine found in the pocket behind the driver's seat were in appellant's custody, care, control, or management in light of the multiple individuals who had access to the drugs.[7]

Here, the State offered substantial circumstantial evidence that appellant possessed the drugs hidden in the seat pocket. That is, appellant was in the back seat of the vehicle when the search warrant was executed and the contraband was found in close proximity to where appellant was seated; appellant was seated in the lap of another person in the back seat, within arm's reach of the seat pocket where the drugs were found; appellant made furtive gestures—"reaching down" behind the driver's seat as witnessed by Officer Andrade when he arrived to secure the vehicle.

---

[7] Appellant does not contest his conviction on Count IV—possession of methamphetamine—but he does challenge the possession element of Count II—possession of methamphetamine with intent to deliver. A review of the record reveals that Count IV only includes the methamphetamine found in the house, while Count II must include the methamphetamine found in the vehicle.

Appellant's attempt to flee from law enforcement and ignoring directives to stop is a fact from which the jury could have inferred a consciousness of guilt. Appellant ran before any contraband was found in the vehicle, and he was the only person who fled from the vehicle where the contraband was located. The fact that appellant fled the scene before the vehicle had even been searched indicates he knew there was contraband in the vehicle.

Other evidence from which the jury could have linked appellant to the cocaine and methamphetamine found in the car was the other contraband and drug paraphernalia found in his residence. When appellant was arrested, he made incriminating statements—admitting to possessing the methamphetamine (1.63 grams) and the bricks of marijuana (1.98 pounds) found inside his residence. He also admitted that multiple glass pipes belonged to him. This quantity of drugs, especially the marijuana, is more consistent with delivery than personal use. Further, a handgun and a rifle were found concealed in appellant's bedroom. These firearms also link appellant to the business of selling drugs.[8]

Another link connecting appellant to the contraband was his possession of $1,250, in small denomination bills, indicative of street-level drug transactions, and a marked $100 bill used by a confidential informant to purchase cocaine from appellant.

Finally, appellant was identified in the Snapchat video asking if "the bitch want[s] pure cocaine" and talking about counting his money. The evidence established that this video was posted close in time to the execution of the search warrant. The large amounts

---

[8] While we note this evidence of appellant's intent to deliver the controlled substances, appellant's sole appellate issue relates only to his possession of the drugs found in the vehicle.

of cocaine and methamphetamine found in the car were consistent with delivery as opposed to personal use.  The Snapchat video links appellant to the possession and selling of these substances.

Based on the totality of the evidence presented, we find sufficient links exist between appellant and the cocaine and methamphetamine found in the vehicle to determine the evidence is sufficient to support his conviction for possession of these drugs with intent to deliver.

## Conclusion

We overrule appellant's sole issue and affirm the trial court's judgment.


Judy C. Parker
Justice

Do not publish.